## The Pennsylvania and Ohio Canal Co. *versus* Graham.

1. A canal company by its charter was required to build and keep in repair bridges where the canal should pass a road; as a traveller was passing over one of these bridges, it gave way and he was precipitated, with his wagon, &c., into the canal. *Held*, that an action lay against the company for the injury.

2. The requirement was for the benefit of all persons travelling upon the highways.

3. The charter is a law imposing on the company the burden of performing a duty to the public.

4. If the duty to the public be not performed, the company is responsible to those who thereby suffer special injury.

5. If a party has suffered special damage, whether direct or consequential from a public nuisance beyond that which affects the public, an action will lie against the author of the nuisance.

6. Remedies provided by charter against a canal company, for injuries arising from the construction of their works, do not exclude the common-law remedies for injuries from an abuse of privileges or neglect of duties.

7. A corporation bound in consideration of the franchise to keep a road or bridge in repair, is liable for injury to a person from want of repair, whether the defect be patent or latent, unless he be in default or the defect was from inevitable accident, tempest or lightning, or the wrongful act of a third person of which they had no notice or knowledge, and this although ordinary care was used in the erection or repair, and the work was done by competent workmen under contract.

8. In estimating damages for injuries to the person, the jury may consider the pain suffered, bodily and mental, the expenses and loss of property they occasion, and loss of time.

November 15th 1869. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Lawrence county:* No. 7, to October and November Term 1869.

This was an action on the case, brought September 25th 1866, by William Graham against the Pennsylvania and Ohio Canal Company.

The declaration averred the existence of a highway in New Castle, Lawrence county, which was intersected by the defendants' canal under the laws of the Commonwealth, and that there was a bridge over the canal where it intersected the highway which the defendants were bound by law to keep in repair: that the bridge was out of repair, and the defendants had neglected to repair it; that the plaintiff, having lawful occasion to pass on the bridge with two horses and wagon laden with grain and merchandise, and believing the bridge to be safe and in good repair, went upon it with his horses, wagon and its load, but in consequence of the bad condition of the bridge it gave way, and precipitated himself, his horses, wagon, &c., into the canal, and that he sustained great bodily injury, and his horses, wagon and merchandise also were greatly injured.

[Pennsylvania and Ohio Canal Co. *v.* Graham.]

The defendants were incorporated April 14th 1827 (Pamph. L. 371.) By the act of incorporation they were authorized to receive tolls for transportation on their canal; they were required " to build and keep in good repair suitable and convenient bridges over said canal, in all such places where said canal shall pass any existing state or county road which at the time shall be opened and used as such, and where the commissioners appointed to estimate damages as aforesaid shall deem such bridge necessary and expedient," &c.

The plaintiff gave evidence that he was crossing the bridge with a wagon drawn by two horses and laden with fifty bushels of wheat, when the bridge gave way, and he, with his horses, wagon, &c., fell into the canal, and that, besides the injury to his horses, wagon and load, he sustained very serious bodily injury. Amongst other witnesses, the plaintiff examined Dr. Kirker and Dr. Woodbridge, who having testified as to the condition of the plaintiff and the character of his injuries, the plaintiff proposed to prove by each " the nature, extent and necessary consequences of the injury for which suit is brought, for the purpose of enabling the jury to make a just estimate of the damages to which the plaintiff is entitled, if any." The offers were objected to by the defendants, allowed by the court, and several bills of exceptions sealed.

There was evidence given by both parties of the condition of the bridge. The defendants gave evidence that the bridge had been built by contract; that the contractor was an experienced bridge-builder; that the materials were good, and that the bridge had been well built; they gave evidence also of the weight of the plaintiff's horses, wagon and load.

The points submitted by the plaintiff, with their answers, are as follows:—

1. " The building and keeping in good repair a suitable and convenient bridge at the place where the canal crossed the public road, was a condition of the grant of corporate franchise; defendants having accepted the grant, became absolutely bound to the perfect performance of said condition, and consequently responsible for any injury resulting from defects therein, whether known or unknown by them."

Answer : " We affirm this point, and we add thereto an explanation in reference to the duty imposed by the act of incorporation, and in doing so quote from a decision of our Supreme Court, defining what is negligence, and where it may arise, that the jury may understand and apply the principles of law to the facts of the case. ' That what constitutes negligence in a particular case is generally a question for the jury and not for the court, is undoubtedly true; because negligence is a want of ordinary care. To determine whether there has been any negligence involves two

[Pennsylvania and Ohio Canal Co. *v.* Graham.]

inquiries. First.—What would be ordinary care under the circumstances? And, second, whether the conduct of the person charged with negligence came up to the standard? In most cases the standard is variable and must be found by the jury. But when the standard is *fixed*, that is, when the measure of duty is defined by law, entire omission to perform it is negligence. In such case the jury have but one of these inquiries to make. They have to find whether he upon whom the duty rests has performed it. If he has not, the law fixes the character of his failure and pronounces it negligence.'

" Here the charter defines the duty to be to build and keep in good repair suitable and convenient bridges over the company's canal, in all such places where said canal shall pass over any existing state or county road, which at the time shall be opened and used as such. And if the jury find from the evidence that at the time of this alleged injury to the plaintiff the bridge was not in good repair, but in consequence thereof the injury happened without any fault upon the part of the plaintiff at the time, he is entitled to recover."

2. "But if the court should be of opinion that defendants are only responsible for negligence, yet defendants are liable for the least possible degree of it. That the slightest omission of any measure or means to avoid danger against which human foresight or prudence could guard, will make them liable for any accident which may be the consequence of it."

Answer: "We answer that we think our answer to the first covers this point, but we will fully answer it by affirming it as containing correct principles of the law."

The defendant's points, with their answers, are as follows:—

1. " The plaintiff must show that the road at the place where this bridge is located was opened and used as a state and county road at the time the canal was constructed, and that such bridge was deemed necessary and expedient by the commissioners appointed to estimate the damages on said canal."

Answer: "We answer this point in the affirmative. And upon the question of the proof upon the subject, the law will authorize the jury to presume that the defendants erected the bridge in accordance with the terms of the act of incorporation, and that it was deemed expedient by those authorized to determine where, that the same should so be erected at the place where the proof shows it to have been built."

3. " The township in which this bridge is located is primarily liable for injuries resulting from negligence or want of care in construction of or keeping said bridge in repair, and that no recovery can be had against the company by the plaintiff in this action."

Answer: "We answer this in the negative. And unless the

evidence satisfies the jury that the company had abandoned the canal and had no further claim to it, or had lost its franchises by forfeiture, the company is primarily liable for the injury to the plaintiff."

3. " The act incorporating the defendants, in making it their duty to erect bridges and to keep them in repair, only imposed upon them the same duty and care as is by law imposed on supervisors in the care and repair of roads and bridges."

Answer : " We answer this in the negative, and say to the jury the duty imposed is well defined in the 10th section of the act of incorporation, which is to erect and keep in repair the bridge over the public highway, suitable and convenient for the public to travel over."

4. " That the basis of any recovery in this action is the negligence of defendants, its officers or servants, and injury resulting from it. And that no recovery can be had unless such negligence is shown."

Answer : " We say the basis of this action as claimed by plaintiff is the alleged failure of the defendant to have kept the bridge in good repair. And we instruct the jury that it must appear that at the time the bridge was in good repair, in order to relieve the defendant from liability for the injury sustained in the manner it was received."

5. " Such negligence must be affirmatively proved like any other material fact, and is not to be presumed from the fact that the bridge broke down under a heavy load."

Answer : " We answer in the negative, with the explanation we made in our answer to the plaintiff's first point on the subject of negligence. And unless the cause of the breaking down of the bridge be the weight of plaintiff's horses, wagon and merchandise, or is accounted for in some other way, the presumption would be the bridge was defective, and the law would presume negligence in the company in not keeping it in good repair."

6. " The degree of care which was incumbent on the defendants to exercise was but ordinary care, such as an ordinarily careful and prudent man would exercise under similar circumstances. And if defendants had exercised such ordinary care and caution, they are not liable for any injury resulting to plaintiff from the falling of said bridge or any defect therein."

Answer : " We answer in the negative."

7. " If the jury find that this bridge was not built by the defendants, but was built by contractors for the defendants, and who built the same by the job, having the control and selection of the men and material employed in its construction, and that defendants did not have such control or selection, then defendants is not liable for any negligence of said contractors or their

[Pennsylvania and Ohio Canal Co. *v.* Graham.]

employees, or for any defect in the construction of said bridge, unless guilty of negligence in not repairing the bridge afterward."

Answer: "The charter of incorporation upon its acceptance required the building and repairing, by the canal company, of the bridge, and it is responsible for the manner in which it was constructed, and for its maintenance by good repair; and therefore we negative this point."

8. "Defendants would not be guilty of negligence in not repairing said bridge, after built, unless the defect was known to them or was of such a nature, or under such circumstances as that a man of ordinary care and prudence ought to have known or suspected its existence."

Answer: "We cannot affirm this point, for reasons assigned in our answer to the sixth point."

9. "Defendants are not liable for any defect in said bridge, either in its original construction or for not repairing it, unless defect was known to them, or was of such a nature, or under such circumstances, as that a man of ordinary care and prudence ought to have known of its existence."

Answer: "We cannot affirm this point for reasons assigned in our answer to the sixth point."

10. "The company is only required to make repairs when, and such repairs as, the township supervisors give it notice of and require it to make."

Answer: "We answer this in the negative, and say to the jury that no notice is necessary to be given to the defendants, when the bridge needs repair, from the supervisors of the township. The defendants being compelled to repair, must do so without waiting for notice from any stranger to the company."

The verdict was for the plaintiff for $8000.

The defendants removed the case to the Supreme Court. Of their assigments of errors twelve related to the answers of the court to the points: the thirteenth to ruling as to evidence.

*B. B. McComb* and *F. Hutchins*, for plaintiffs in error.—The obligation of the company was to the Commonwealth, the money, if any, was public and the remedy could not be private: 3 Black. Com. 219; Broom on Common Law 97. The accident was unavoidable, there was therefore no liability: Brown *v.* Mallett, 5 C. B. 599. The duty of repair was on the township: 3 Bacon's Abr. 498, 500; 3 Burns Just. "Highways," Acts June 13 1836, sect. 6; 31 Pamph. L. 556, 560, April 12 1855, sect. 1; Pamph. L. 220; Purd. 875, 876, 879, pl. 41, 47, 79. The township would have its remedy against the company: 1 Redfield on R. R. 538 *et seq.*; Painter *v.* Pittsburg, 10 Wright 213. The declaration should have charged negligence: 1 Hilliard on Torts 109. The requisition of the charter to repair was a limitation of the fran-

chise, not a rule of liability : Monongahela Bridge v. Kirk, 10 Wright 112. Negligence is necessary to create liability : Dunlap v. Knapp, 14 Ohio S. Rep. 64; Oakland R. R. v. Fielding, 12 Wright 320; Angell on Highways, sect. 272; Lancaster Can. Co. v. Parnaby, 11 A. & E. 243; Orcutt v. Kittery Bridge, 53 Maine 500; Baxter v. Winooski Turnpike, 22 Vermont 114; Matthews v. Same, 24 Id. 480. The contractor to build the bridge alone was liable : 1 Parsons on Contr. 86–92; 2 Hilliard on Torts 446–460; Clark v. Try, 8 Ohio S. Rep. 358.

*L. Taylor* (with whom were *D. B. & E. T. Kortz*), for defendant in error.—The company took their privileges with the burdens : Penna. R. R. v. Com'th, 3 Grant 131. Whether the neglect was wilful or inadvertent is unimportant : Erie City v. Schwingle, 10 Harris 384; Pittsburgh v. Grier, Id. 64; Dean v. New Milford, 5 W. & S. 545. The company are liable although the defect was latent : Yale v. Hampdon & B. Turnp., 18 Pickering 357. The happening of the injury raises the presumption of want of care : Laing v. Colder, 8 Barr 482; N. Jersey R. R. v. Kennard, 9 Harris 204; Railroad Co. v. Aspell, 11 Id. 149; Sullivan v. Philadelphia & Reading R. R. Co., 6 Casey 239; Tennery v. Pippinger, 1 Phila. Rep. 543; 2 Pars. on Con. 228, note.

The opinion of the court was delivered, January 3d 1870, by

SHARSWOOD, J.—The first twelve assignments of error all depend upon one question, whether the defendants below were responsible in damages to the plaintiff for the injury which he sustained in consequence of the admitted insufficiency of the bridge over their canal, without some evidence of actual or wilful negligence on their part.

It has been argued that the defendants are not liable to the plaintiff at all, because they owed him no duty. Their charter, by the terms of which they were " to build and keep in good repair suitable and convenient bridges over the canal," it is contended, was a contract with the state, who, alone, can take advantage of its violation. There was no privity, therefore, in the plaintiff. But even regarding it in that light, for whose use and benefit did the Commonwealth exact this engagement from the corporation, as one of the terms and conditions upon which the franchise was granted ? This particular clause was evidently for the benefit of all persons travelling upon the public highways. If A. contracts with B. to do a certain thing for the benefit of C., and does it so badly that C. is injured by his misfeasance, C. could not perhaps sue directly on the contract, but *non constat* that he could not maintain an action on the case, on the principle that it was a breach of duty to him, though springing from a contract with another. If, as the argument seems to admit, the

Commonwealth could sue for the use of the plaintiff, there is no reason why he may not maintain an action in his own name.

But it is not necessary to rely on this line of reasoning. The charter is, indeed, a contract; but it is also a law imposing upon the defendants, as a corporation, the burden of performing a certain duty to the public. If that duty to the public has not been performed, they become thereby responsible to all persons who may suffer any special injury in consequence of it. Upon the same principle, which has been settled law from the Year-Books downward, if a party has sustained any special damage from a public nuisance beyond that which affects the public at large, whether it be direct or consequential, an action will lie against the author of the nuisance, for redress. If the defendants, although under the authority of their charter, built a bridge over their canal, which either originally was rotten and unsafe, or became so subsequently, it was a public nuisance in the highway, and the plaintiff, having suffered a direct, special injury, was entitled to recover of them the damages: Wilkes v. Hungerford Market Company, 2 Bingh. N. C. 281; Hughes v. Heiser, 1 Binn. 463; Pittsburgh v. Scott, 1 Barr 309; Commissioners v. Wood, 10 Id. 93; Baxter v. Winooski Turnpike Company, 22 Verm. 122.

In Manley v. St. Helen's Canal and Railway Company, 2 Hurls. & Norm. 840, the defendants had, by Act of Parliament, the right to construct a canal and take tolls thereon; and had built the same across an ancient highway, having made a swivel bridge across the canal for the passage of the highway. A boatman having opened the swivel bridge to allow his boat to pass through in the night time, a person walking along the road fell into the canal and was drowned. It was held that the defendants, having a beneficial interest in the tolls, were liable to an action, the same as any owner of private property would be, for a nuisance arising therefrom. "It has been urged," said Pollock, C. B., " that what was done by this Canal Company was done by them under the authority of an Act of Parliament, passed many years ago, and with the same responsibility as attaches to the trustees of a highway, or other persons, acting in the performance of functions intrusted to them by statute. I do not think that argument can prevail. The owners of this canal were to be looked on as a trading company, who, though the legislature permits them to do various acts described in the statute, are to be considered as persons doing them for their own private advantage, and are, therefore, personally responsible if mischief ensues from their not doing all they ought, or doing, in an improper manner, what they are allowed to do." In The Cumberland Valley Railroad Company v. Hughes, 1 Jones 140, in the case of a railway company, it was held to be their duty to keep the road in sufficient repair. It is a condition attendant upon a grant of the privilege to con-

[Pennsylvania and Ohio Canal Co. v. Graham.]

struct a public road or highway for profit, which from its very nature, enures to the benefit of all who may have occasion to use the thoroughfare. In The Schuylkill Navigation Company v. McDonough, 9 Casey 73, it was decided that the remedies against a canal company, provided by their act of incorporation, for injuries arising from the construction of the works, do not exclude the common-law remedies for injuries arising from an abuse of their privileges, or for the neglect of their duties, and that they are, therefore, liable for injuries sustained by a riparian owner in consequence of an overflow of water, caused by the pool of their dam being filled up by dirt, without regard to the question by whose act such filling up was occasioned. In Pittsburg City v. Grier, 10 Harris 54, it was held that a city, being in possession of a public wharf within its limits, exercising exclusive supervision and control over it, and receiving tolls for its use, is bound to keep it in proper condition and is liable for special injury sustained by an individual in consequence of its neglect to keep the wharf in order. So in Erie City v. Schwingle, 10 Harris 384, the doctrine was laid down expressly that a corporation, which is bound by its charter to keep the streets in repair, is liable for an injury occasioned by its neglect to do so, and it is not material whether the neglect was wilful or otherwise. "Except," says Black, C. J., "in cases where the suit is against a public officer in his individual character and not against the corporation which he represents, as in Bartlett v. Crozier, 15 Johns. 250, it makes no difference whether the neglect is wilful or otherwise." In like manner in Yale v. The Hampden and Berkshire Turnpike Company, 18 Pick. 357, where a statute provided that a turnpike corporation " shall be liable to pay all damages which may happen to any person from whom toll is demandable, for any damage sustained by a traveller in consequence of a defect in the road," the Supreme Court of Massachusetts was of opinion, and so ruled, that by this act it was intended to provide that whenever the traveller himself is not chargeable with negligence or rashness, but when from an unforeseen cause, the road is actually defective and in want of repair, and an accident occurs without the default of either party, the company should be held liable. It is founded on the consideration that the toll is an adequate compensation for the risk assumed, and that by throwing the risk upon those who have the best means of taking precautions against it, the public will have the greatest security against actual damage and loss.

From these cases it may be deduced that, where a corporation, in consideration of the franchise granted to it, is bound by its charter to keep a road or bridge in repair, it is liable for any injury to a person, arising from want of repair, whether the defect be patent or latent, unless he be in default, or unless the defect arose from inevitable accident, tempest or lightning, or the wrong-

[Pennsylvania and Ohio Canal Co. *v.* Graham.]

ful act of some third person, of which they had no notice or know-
ledge.    It matters not that ordinary care was used in the erection
or repair of it, and that such work was done under contract by
competent workmen.    The principle of Painter *v.* The Mayor of
Pittsburg, 10 Wright 213, has no application.    That was an
action for an injury sustained by the plaintiff, from the negligence
of the contractors of the defendants, while engaged in the actual
construction of a sewer.    Had the plaintiff, in this case, fallen
into the canal in consequence of the negligence of the contractors
employed by the defendants, while actually employed either in the
construction or repair of this bridge, the case presented would
have been entirely different.

It is supposed that Oakland Railway Company *v.* Fielding, 12
Wright 320, is inconsistent with this view.    But it is to be re-
marked that the injury arose, in that case, from a hole in the
road made by third persons.    " If, then," said the learned judge
below, " the defendants had notice of the hole—if they knew that
it rendered the street unfit and dangerous for public travel, and
if they knowingly suffered it to remain in that condition without
an effort to repair it, they were guilty of negligence."    It is evi-
dent, then, that the case was rested upon an entirely distinct and
independent ground, which does not touch the principle established
in the other cases cited.    It may be safely admitted that if a third
person had wantonly or maliciously cut away part of the timbers
of this bridge, in consequence of which it had fallen, the defend-
ants would not be liable, unless notice or knowledge of the defect
and neglect to repair it were brought home to them.

It is proper to notice the case of Monongahela Bridge Com-
pany *v.* Kirk, 10 Wright 112, which has been much relied on as
showing that a clause in the charter of a bridge company that the
bridge should not be erected " in such a manner as to injure, stop
or interrupt the navigation of the river by boats, rafts or other
vessels," is a limitation of the franchise only, and not a rule of
liability to injured navigators.    Although this is said in the opin-
ion, it must be considered in its application to that particular
case, and not as the statement of a general principle.    The injury
there arose from the erection of piers, which the company were
authorized by their charter to build, and for consequential dam-
ages for an act within the authority conferred upon them, they
were not responsible, as was held in The Monongahela Navigation
Co. *v.* Coon, 6 Barr 382, and many other cases.    " Surely,"
says Read, J., " it cannot be maintained that the proviso in the
company's charter is a declaration that they shall pay damages
to any one injured.    It is clear, therefore, that the defendants
are not liable in this action unless the bridge be an unauthorized
erection, and consequently a nuisance.    That it is not has been
sufficiently shown."

[Pennsylvania and Ohio Canal Co. *v.* Graham.]

On the whole, then, we are of the opinion that the answers of the learned judge to the several points which form the subjects of the first twelve specifications of error were correct.

It remains to consider the 13th assignment, that the court erred in receiving the testimony of Drs. Kirker and Woodbridge relating to the pain and suffering of the plaintiff from the injuries received by his fall. Damages, which necessarily result from the act complained of, are properly termed general damages, and may be shown under the common allegation, *ad damnum*. Injuries to the person consist in the pain suffered, bodily and mental, and in the expenses and loss of, property they occasion. In estimating damages, the jury may consider not only the direct expenses incurred by the plaintiff, but the loss of his time, the bodily suffering endured, and any incurable hurt inflicted, for these may be classed among necessary results: Laing *v.* Colder, 8 Barr 479; Pennsylvania Railroad Co. *v.* Books, 7 P. F. Smith 339. There was no error, therefore, in the admission of this evidence.

Judgment affirmed.