Argued April 7, decided July 6, 1909.

### KENNEDY *v.* HAWKINS.

[102 Pac. 733.]

NEGLIGENCE — INJURIES TO PERSON OR PROPERTY — ELEMENTS OF LIABILITY.

1. To maintain an action for injury to person or property by reason of negligence, there must be shown to exist some obligation or duty towards plaintiff which defendant has left undischarged or unfulfilled.

NEGLIGENCE—COMPLAINT.

2. A complaint for injuries resulting from negligence should allege what duty was imposed on defendants toward plaintiff, or state facts from which the law would imply a duty, and then charge a breach or negligent performance thereof.

NEGLIGENCE—DANGEROUS WORK—CARE REQUIRED.

3. Where workmen were engaged to repair or underpin the wall of a building, the work being essentially dangerous to person and property of the occupants, the workmen were required to use reasonable care and skill in the performance of the work, although as to such occupants they were not bound to undertake it.

NEGLIGENCE—DANGEROUS WORK—DELAY.

4. Workmen agreeing with the owner to support the wall of a building sustained no contractual relation to occupants thereof, so that delay in beginning the work, if any, was not available to such occupants in a suit for injuries to their property by alleged negligent performance of the work.

NEGLIGENCE—PLEADING—COMPLAINT.

5. A complaint alleging negligence generally, without charging the particular facts showing the act or ommission to have been negligent, is sufficient, in the absence of an application for a more specific statement.

NEGLIGENCE—COMPLAINT ISSUES AND PROOF.

6. Where a complaint contains a general averment of negligence, and defendant joins issue without moving for a more specific statement, proof of any negligence within the general scope of the allegation in the complaint is competent.

NEGLIGENCE—COMPLAINT—ISSUES AND PROOF.

7. That defendant joined issue on a complaint averring negligence generally without moving to make the pleading more definite, did not relieve plaintiff from the obligation to prove a particular act of negligence.

NEGLIGENCE—RES IPSA LOQUITUR.

8. Where defendants undertook to underpin the foundation of a building, and while doing so the building fell, such facts alone did not establish negligence, as defendants were not insurers of the successful performance of the work without fault or error of judgment, but were only liable for negligence, bad faith, or dishonesty.

NEGLIGENCE—FINDING—CAUSE OF ACTION.

9. In an action for injuries to the personal property of the occupants of a building by the falling of a wall thereof while defendants were performing a contract with the owner to underpin and support the same, evidence *held* insufficient to sustain a finding that the falling of the wall was attributable to defendants' negligence.

From Multnomah: THOMAS O'DAY, Judge.

Statement by MR. JUSTICE SLATER.

This action was brought by Della Kennedy against W. J. Hawkins, Alfred J. Bingham, and Joseph McClelland to recover the value of certain household goods and personal property belonging to plaintiff, which were destroyed and damaged by the falling of the north wall of the house where she resided, alleged to have been caused by the joint negligence of defendants.

Plaintiff occupied rooms in a three-story brick building belonging to Clara W. Hawkins, the same being situated on lot 7, block 115, near the corner of First and Columbia streets, in the city of Portland, Oregon. Lot 7 is on the east side of First street, and faces west. In the early part of March, 1907, J. F. Shea, the owner of the adjoining lot on the north, began an excavation on his property preparatory to the erection of a building thereon. The west 25 feet of the north wall of the building, in which plaintiff resided, was about on the

property line, and the foundation thereof extended down three or four feet below the surface of the ground. Shea's excavation was to be of a depth of about 11 feet, making it necessary to underpin and support the wall of the Hawkins building on lot 7. It is alleged, in substance, that W. J. Hawkins was the agent of Clara W. Hawkins, the owner of the building where plaintiff resided; that he had been given due and timely notice of Shea's intention to make an excavation; that the building of which he was the agent, should be protected by taking proper precautions to brace and fix up the foundation thereof; that Hawkins employed his codefendants to brace up the foundation thereof, and keep it from falling; that on or about April 1, 1907, all of them "attempted to put supports and braces under said building, and that the same was negligently and carelessly done and without due and proper precautions, and that the said defendants negligently and carelessly failed to place the proper support, foundation, and braces under the foundation of said building, and that through said negligence and carelessness of the said defendants, the said foundation caved and broke away on the 2nd day of April, 1907, and caused the northwest corner of said building to fall and break away," thereby destroying plaintiff's goods contained therein.

Bingham and McClelland answered jointly, denying the material allegations of the complaint, except they admit that they were employed by Hawkins about April 1st to brace up the foundation of the building, and that the foundation thereof caved in and broke away. Hawkins answered separately, but, as the verdict was in his favor, it will not be necessary to state the effect of his pleading. At the close of plaintiff's case, defendants interposed a motion for a nonsuit, based upon the claim that no negligence had been shown. This being denied, defendants offered testimony in their behalf resulting in a verdict against Bingham and McClelland for a por-

tion of the claim, and they have appealed from the judgment entered thereon.                    REVERSED.

For appellant there was a brief over the names of *Mr. William D. Fenton, Mr. Rufus A. Leiter* and *Mr. Ben C. Dey,* with oral arguments by *Mr. J. E. Fenton* and *Mr. Dey.*

For respondent there was a brief and an oral argument by *Mr. Frank Schlegel.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. The action is based upon an alleged tort. In order to maintain an action for an injury to person or property by reason of negligence or want of due care, there must be shown to exist some obligation or duty towards the plaintiff which the defendant has left undischarged or unfulfilled. This is the basis on which the cause of action rests.

2. There can be no fault, negligence, or breach of duty where there is no act, service, or contract which a party is bound to perform or fulfill. The complaint should allege what duty was imposed upon defendants towards plaintiff, or state facts from which the law will imply the duty, and then allege a breach or negligent performance of the duty. 14 Pl. & Pr. 331, 332.

3. The substance of the facts stated are, that plaintiff was rightfully an occupant of the building, and that the defendants undertook to repair or underpin the wall thereof. The essential nature of the work being dangerous to the persons and property of the occupants of the building, the law imposes upon those who undertook to perform it the duty of using reasonable skill and care in the performance of the task, although, as to plaintiff, they were not bound to undertake it.

4. The right of action comes from a duty imposed by law, and not from a duty arising out of contract, because no contractual relation existed between plaintiff and defendants. Therefore delay in beginning the work,

if any, can be of no avail to plaintiff (1 Cooley, Torts, 240), for that would amount only to a breach or negligent performance of duty arising out of contractual relations existing between either the owner of the building and Hawkins, her agent, or between her and the defendants, Bingham and McClelland. The effect of the averment that Hawkins, as agent of the owner, employed his codefendants to perform certain work upon the building, is to deprive them of the character of trespassers, and to authorize them to enter upon the premises for the business they undertook.

5. The nature of the action being that of a pure tort, the right to recover must be confined to a negligent act or omission of the defendants done in the course of the performance of the task which they undertook, and which was the proximate cause of the building falling. The complaint does not point out specifically the particular act of negligence or omission of duty relied upon, but avers generally that defendants "attempted to put supports and braces under said building, and that the same was negligently and carelessly done, and without due and proper precautions, and that said defendants negligently and carelessly failed to place the proper support, foundation, and braces under the foundation." It is always necessary in pleading negligence to allege that some act was negligently done, or that something that ought to have been done was omitted, but it is not necessary to set forth the particular facts that show the act or omission to have been negligent. *Cederson* v. *Oregon Navigation Co.*, 38 Or. 343 (62 Pac. 637: 63 Pac. 763).

6. But, when a complaint contains a general averment of negligence, and the defendant joins issue without moving to make the pleading more definite, proof of any negligence within the general scope of the allegation is competent. *Jones* v. *City of Portland*, 35 Or. 512 (58 Pac. 657).

7. This, however, does not relieve the plaintiff from proving a particular act of negligence upon which she

bases her right to recover, and in this respect we think she has failed.

8. Defendants admit in the pleadings that they undertook to underpin the foundation, and that while in the performance thereof the building fell, but this of itself, taken in connection with the surrounding circumstances, does not establish negligence; for no man, whether skilled or unskilled, undertakes that the task he assumes shall be performed successfully and without fault or error. He undertakes for good faith and integrity, but not for infallibility, and he is liable to his employer for negligence, bad faith, or dishonesty, but not for losses consequent upon mere errors of judgment. 2 Cooley, Torts, 1386.

9. With this preliminary statement of the legal principles governing the consideration of the case, we proceed to the facts disclosed by the plaintiff's testimony. Shea testifies that about March 4th he began tearing down the old buildings on his lot, which work consumed about ten days, and then he began the excavation; that 20 or 25 days before the accident he had a conversation with Hawkins about the necessity of underpinning the foundation of the latter's building, and, at the latter's request, offered to secure the services of his brick mason to do the work; that a few days thereafter he told Hawkins that his mason could not do the work, and thereafter Hawkins employed Bingham and McClelland; that Bingham came to the premises, examined the situation, and between them they agreed with Shea that the latter had left sufficient soil next the building to reasonably insure its safety. At that time Shea had excavated to the full depth of his basement at a distance from the building standing on lot 7, but had left next thereto a bank of earth, estimated by him to be three feet across at the foot wall, and sloping off to the north to a width of ten or fifteen feet. Shea is very indefinite and uncertain as to the precise time this conversation with Bingham

took place with relation to the beginning of defendant's work, but the time is stated definitely by Hawkins in his disposition offered by the plaintiff. He testifies that on Thursday, March 28th, Shea informed him that his mason could not do the work, and that he immediately sought the services of Bingham and McClelland, finding the latter engaged at the Wells-Fargo building, then in course of construction. The former was out of town, but he saw him the next morning, and perfected an agreement with him to underpin the foundation. The defendants were to get their material on the ground the next day and begin the task Monday, April 1st, which they did. It is shown that they are experienced men in that class of work. On the first day a pit was dug under the wall at the east corner of the building to the depth of Shea's intended excavation, and a brick pier was built therein, and was completed on Tuesday morning a short time before the accident occurred, which was about 11 o'clock of that morning. A second pit of the same character had been dug at the center or middle of the wall. A mason was engaged in constructing a brick pier and two or three courses of brick had been laid. One of the defendant's employees had started to excavate a third pit at the northwest corner of the building, when the bank of earth supporting the wall gave way, and the wall from the northwest corner back to the completed brick pier fell. The soil, to a depth of about four feet, consisted of clay, under which was a stratum of sand.

Plaintiff apparently attempts to place the negligence of the defendants upon the claim that these pits were unnecessarily large, and that but one should have been dug at a time, but no one experienced in that work undertook so to testify. We believe two witnesses did testify that too much dirt had been removed from the wall, but it was not specifically charged as the act of the defendants. Shea did say that each of these pits was five or six feet across, but the photographs of the

scene, taken after the wall fell, and offered in evidence
by the plaintiff, disclose very clearly that the pier
built at the corner occupies the full width of the excava-
tion made for it under the wall, and, computing from the
well-known dimensions of ordinary brick, it cannot be
over 29½ inches across.  To underpin a brick wall, it
is, of course, necessary to first make an excavation of
some sort under the wall.  The pier at the east corner
having been completed before the accident, no negligence
could be attributed to defendants on account of that
excavation.  The second pit at the middle of the wall,
and about 12 feet distant from the first was of the same
character.  It is not shown that it was of unusual or un-
necessary size, or that it was not proper or customary so to
locate or dig such a pit under a wall, assumed by plaintiff
to have been in a reasonably safe condition before the
work began.  In other words, to hold defendants liable
under such circumstances, it must be held that it was
negligence on their part to attempt at all to do the
work in the manner employed by them.  If negligence
is predicable at all in that regard, it must be upon the
basis that the wall was in a dangerous condition before
they entered upon the performance of the work, and
that they knew, or ought to have known, of such dan-
gerous condition.  This, however, plaintiff does not seek
to charge.  Plaintiff's case, however, discloses that a
large amount of earth immediately adjacent to this wall
which was necessary for its proper and reasonable
support must have been removed by Shea's employees
while defendants were engaged in procuring material
and putting in the first pier.  Shea testified that, when
Bingham and he had agreed that there was sufficient
earth left, there was a bank from two to three feet in
width at the top sloping off from ten to fifteen feet at
the bottom, but the photographs in evidence, above
referred to, disclose no such quantity of soil.  In fact, it
is difficult to discover that there was any appreciable

amount left. Hawkin's deposition also discloses that, when he examined the premises after the accident, he discovered there was not nearly the amount of embankment next the wall as there was when he was there on Thursday, March 28th, preceding the accident, and he says that a large amount must have been removed by Shea. While the latter qualifiedly denies this in his rebuttal testimony, yet he admits in his testimony in chief that he afterwards "shaped up" the bank some, and that Bingham told him he would not start in until he (Shea) got down deeper with the excavation, so that he (Bingham) would not have to handle the dirt twice. This, we think, is sufficient to remove the apparent conflict in the testimony, so that the facts are practically undisputed and disclose that the falling of the wall was not attributable to the alleged negligent acts of Bingham and McClelland, and therefore the court should have sustained their motion for a nonsuit.

The judgment is reversed, and the cause remanded for a new trial.        REVERSED.