Argued January 13, affirmed February 24, rehearing denied April
21, 1925.

# OTTO SCHUMANN *v.* THE BANK OF CALI-
# FORNIA, N. A.

(233 Pac. 860.)

**Assignments—Assignment of Non-negotiable Choses in Action not
Invalid for Want of Notice to Debtors.**

1.   Assignments by dealer in musical instruments of conditional
sales contracts which constituted non-negotiable choses in action,
*held* not invalid for lack of notice to debtors of such assignments.

**Assignments—Assignee's Temporary Surrender of Assigned Contracts
Held not Negligence Estopping His Assertion of Right Superior
to Subsequent Assignee.**

2.   Where conditional sales contracts, having attached to them
written assignments, were by assignee temporarily surrendered to
assignor, for purpose of having credited thereon payments of
debtors, and where assignor wrongfully removed such written assign-
ments and made new assignments to third person, *held* original
assignee's surrender for limited purpose stated was not negligence
estopping him from asserting his prior right.

**Estoppel—Rule as to Liability of Person Who has Enabled Another
to Commit Wrong has No Application, Where Wrong is Ac-
complished Through Instrumentality of Criminal Act.**

3.   Rule that where two innocent persons must suffer for wrong-
ful act of another the one who enabled such third person to do
wrong must bear burden, has no application where wrong is accom-
plished through instrumentality of criminal act.

**Estoppel—Negligence must Amount to Breach of Duty Before Party
is Estopped to Assert Claim to Property Transferred by Another
Without Authority.**

4.   Before a party is estopped to assert his rights to property
because of want of care in preventing unauthorized transfer of it,
his negligence must amount to a breach of duty which he owes to
party claiming estoppel.

**Negligence—Essentials of Actionable Negligence Stated.**

5.   For an act to be negligent there must be a duty owing to
some person and failure to perform it, and for negligence to be ac-
tionable it must result in damage to person to whom duty is owed

---

1.   Necessity of notice to debtor of assignment of chose in action,
note, 36 Am. Dec. 475. See, also, 2 R. C. L. 624.

3.   See 10 R. C. L. 695.

5.   See 20 R. C. L. 10.

**Estoppel—Negligence cannot be Predicated on Failure to Anticipate Crime.**

6. No person owes another any duty to anticipate a crime will be committed, and negligence cannot be predicated on failure to act on that belief.

**Assignments—Prior Assignee of Non-negotiable Conditional Sales Contracts Held not to Possess Right Superior to Subsequent Good-faith Assignee.**

7. Where assignee of non-negotiable conditional sales contract temporarily surrendered them to assignor for entry thereon of payments made by debtors, and where assignor wrongfully removed written assignments attached to them and made new assignments to a third person, *held* principle that assignor of chose in action can confer no better title than he possesses did not operate in favor of original assignee as against subsequent assignee, since original assignee was not absolute owner, but only pledgee.

**Sales—Bona Fide Purchaser of Chose in Action from One Who Acquitted It Through Commission of Crime Generally Acquires No Title.**

8. As general rule, subject to exception in cases of negotiable securities, no title can be acquired from one who has no title, and a *bona fide* purchaser for value from one who comes into possession of a chose in action through commission of crime acquires no title to it.

**Pledges—Pledgee Surrendering Pledged Thing to Pledgor for Limited Purpose cannot Recover It from Bona Fide Purchaser of Pledgor.**

9. Though pledgee's voluntary redelivery of thing pledged to pledgor for special purpose will not defeat pledgee's right to recover pledged property when purpose has been fulfilled, or to maintain action against pledgor for conversion thereof, if pledgor, while so in possession, sells or transfers thing pledged to *bona fide* purchaser for value without notice, pledgee can neither recover it from such purchaser nor maintain action against him for its conversion.

**Pledges—Possession is of Essence—Pledge Extinguished on Surrender of Possession.**

10. Possession is essence of a pledge and once thing is surrendered pledge as such is extinguished.

**Pledges—Pledgee Temporarily Surrendering Pledge Held not Entitled to Recover of Subsequent Good-faith Assignee or Pledgee of Owner.**

11. Pledgee of non-negotiable conditional sales contracts, who temporarily surrendered them to pledgor for indorsement on them of payments made by debtors, *held* not entitled to recover of sub-

---

8. See 24 R. C. L. 375; 3 R. C. L. 1000.

9. See 21 R. C. L. 657.

10. See 21 R. C. L. 642.

sequent assignee of owner who took without notice of prior assignment, after owner had wrongfully removed written assignments attached at time of surrender.

See (1) 5 C. J. 933, 954.  (2) 5 C. J. 956 (1926 Anno.).  (3) 21 C. J. 1172.  (4) 21 C. J. 1172.  (5) 29 Cyc. 419.  (6) 21 C. J. 1172.  (7) 5 C. J. 956 (1926 Anno.).  (8) 35 Cyc. 357.  (9) 31 Cyc. 842 (1926 Anno.).  (10) 31 Cyc. 799, 819.  (11) 31 Cyc. 842 (1926 Anno.).

From Multnomah: Robert Tucker, Judge.

In Banc.

Affirmed.    Rehearing Denied.

For appellant there was a brief and oral argument by *Mr. Thomas Mannix.*

For respondent there was a brief over the name of *Messrs. Greene & McCurtain,* with an oral argument by *Mr. Thomas G. Greene.*

RAND, J.—This is a suit for an accounting. The facts are: The Oregon Eilers Music House, a corporation, was engaged in the sale of musical instruments upon the installment or partial payment plan. In its sale of said musical instruments it accepted from its vendees, as part payment of the purchase price, conditional sales contracts. Plaintiff loaned said corporation about $14,000 and defendant $10,000, and they in the order named, are successive assignees of the same contracts. These contracts were in terms payable to the Oregon Eilers Music House, but were not payable to bearer or to order, and hence were not negotiable instruments. They conferred a right to recover a debt which, if not paid according to their terms, could not be enforced without action, and hence were mere choses or things in action, and unlike negotiable instruments,

payable to bearer or to order, could not be trans-
ferred by delivery alone or by indorsement and
delivery. The debt itself was inseparable from the
contract and could be transferred only by assignment
and delivery of the contract. These contracts were
assigned to plaintiff and defendant respectively by
the Oregon Eilers Music House by a written assign-
ment absolute in form attached to each thereof, and
were delivered first to the plaintiff and subsequently
to the defendant as security for the payment of said
loans.

The defendant conducts a general banking business
at Portland, Oregon, and made said loan and accepted
the assignment and delivery of said contracts as
security therefor, without knowledge of any prior
assignment of said contracts or notice of any prior
outstanding equity on the part of the plaintiff.

At the time of the assignment and delivery by said
corporation of these contracts to plaintiff it was
understood and agreed between them that the cor-
poration should collect and retain the payments
falling due on said contracts and would assign and
deliver to plaintiff additional sales contracts equal
in value to the sums thus collected, and would pay
plaintiff each month the interest on his said loan,
and that in order to have the payments thus made
listed and properly credited, said contracts should
be delivered once each month at the office of the
corporation, and that as soon as such payments were
so listed and credited that corporation would im-
mediately return the same to plaintiff. It is un-
disputed that, pursuant to said understanding and
agreement, once each month plaintiff left said con-
tracts at the office of said corporation for said pur-
pose only, and that they were returned to him within

a day or two thereafter until June 13, 1922, when, pursuant to said understanding and agreement, they were left at the office of said corporation at which time, instead of complying with said understanding and agreement, that corporation fraudulently appropriated and converted them to its own use, and without plaintiff's knowledge or consent removed the written assignments attached thereto and attached other written assignments which purported to assign said contracts to the defendant, and on June 15, 1922, delivered said contracts, with the last-mentioned assignments attached thereto, to the defendant as a pledge or collateral security for defendant's loan.

Plaintiff has received nothing upon his loan, and now claims the right to compel the defendant to account for the proceeds which have been collected upon said contracts and applied in partial satisfaction of defendant's loan.

1. No notice of the assignment of these contracts to plaintiff was given to any of the debtors by whom the contracts were payable. It is contended that notice of the assignments to the plaintiff, was essential to the validity of the assignments, they being non-negotiable choses in action, and that because of plaintiff's failure to give such notice to the debtors named therein, these assignments were invalid.

It is unquestionably the rule in the federal courts and in many other jurisdictions, as well as in England, which has a statute requiring it, that as to third parties notice to the debtor of the assignment of a non-negotiable chose in action is essential to the validity of the assignment, and that as between two successive *bona fide* purchasers of the same chose in action, their relative rights thereto will depend upon the priority in which the notice was given, and

that the one who first gave such notice will be preferred over the other without regard to the order of time in which the assignments were made.

In this state, however, both because of the particular provisions of our own statute and because it was held to be a better doctrine, a contrary rule prevails: *Meier* v. *Mess*, 23 Or. 599 (32 Pac. 755). In that case, in passing upon this identical question, this court, speaking through Mr. Justice Bean, said:

"We are, therefore, confronted with the question as to whether, between successive purchasers of a chose in action, their rights will depend upon the priority of the assignment, or of notice to the debtor."

And after discussing the rule in other jurisdictions, as well as the provisions of our own statute, the court said:

"It seems to us that, under the rule prevailing in this state, an assignment of a chose in action, made in good faith, for a sufficient consideration of a chose in action, made in good faith, for a sufficient consideration, and without intent to defraud creditors, or subsequent purchasers, is complete upon the mutual assent of the assignor and assignee, and does not gain an additional validity as against third persons, by notice to the debtor; and, as between successive *bona fide* assignees of a chose in action from the same person, the one prior in point of time will be protected, though he has given no notice to either the subsequent assignee or the debtor. Notice is indeed needful in order to charge the debtor with the duty of payment to the assignee, so that if, without notice, he pay the debt to the assignor, or to a subsequent assignee, or on a garnishee process he will be discharged from the debt. This seems to us to be the better doctrine, as supported by the general course of decisions in this country."

This decision is decisive of this question. Under its authority the validity of an assignment of a non-negotiable chose in action is not, in this state, affected by a failure to give notice of the assignment to the party by whom it is payable. All that is essential to the validity of the assignment of such chose is that the assignment thereof shall be assented to by the assignor and assignee, and that the assigned chose shall be delivered to the assignee. When this is done the assignment is complete, and a subsequent failure to give notice thereof does not affect the validity of the assignment.

2, 3. The defendant also contends that it was negligence for the plaintiff to deliver these contracts to the Oregon Eilers Music House, even though the possession of them was surrendered temporarily and for a limited and special purpose only, since, in so doing, the plaintiff enabled that corporation to appropriate and convert them to its own use and to transfer them to the defendant as security for a loan, and that by reason of such negligence plaintiff, as against the defendant, is estopped to assert his prior right to said contracts, under the principle that where one of two innocent persons must suffer by the acts of a third he who has enabled such person to occasion the loss must sustain it.

We think that this principle is not applicable to the facts in this case and that no estoppel arose from the transaction. When these contracts were surrendered there was attached to each of them a written assignment transferring them to plaintiff. In the condition they then were that corporation could not transfer them to the defendant without first removing from them the evidence of plaintiff's ownership. In removing these written assignments and sub-

stituting others transferring them to defendant, the officers and agents of the Oregon Eilers Music House, which was in possession of them merely as the agent for plaintiff, committed a crime, since plaintiff, at that time, had a special property in and right to the possession of these contracts, of which he could not be deprived without the violation of a criminal statute. Plaintiff was not bound to anticipate the commission of a crime. He did nothing in connection with these contracts that put it within the power of that corporation, without first committing a crime, to clothe itself with any indicia of ownership or apparent right to dispose of them. If the principle referred to was applicable to a transaction of this nature, or if plaintiff's conduct in respect to these contracts was, in law, negligence sufficient to estop him from asserting his prior title, then every person, who loans or entrusts any article of personal property to another without in any way clothing such person with any evidence of ownership or apparent right to dispose of it, would be guilty of negligence and be estopped from claiming the property as his own, if such person should steal and transfer the property to a third person.

4. Before a party should be estopped, because of a want of care in preventing an unauthorized transfer of his property, his negligence must be such as to amount to a breach of duty which he owes to the party claiming the estoppel: Bigelow on Estoppel, p. 688.

Plaintiff owed no duty to the defendant to anticipate that by leaving these contracts with the Oregon Eilers Music House in the condition they then were they would be used as a means of defrauding the defendant.

"The rightful owner may be estopped, by his own acts, from asserting his title. If he has invested another with the usual evidence of title or an apparent authority to dispose of it, he will not be allowed to make claim against an innocent purchaser dealing on the faith of such apparent ownership. *McNeil* v. *Tenth Nat. Bank,* 46 N. Y. 325 (7 Am. Rep. 341). But mere possession has never been held to confer a power to sell, and an unauthorized sale, although for a valuable consideration, and to one having no notice that another is the true owner, vests no higher title in the vendees than was possessed by his vendor. *Covill* v. *Hill,* 4 Denio, 323." *Smith* v. *Clews,* 114 N. Y. 190 (21 N. E. 160, 11 Am. St. Rep. 627, 4 L. R. A. 392).

"It is only where the owner, by his own affirmative act, has conferred the apparent title and absolute ownership upon another, upon the faith of which the chose in action has been purchased for value, that he is precluded from asserting his real title, and this conclusion was arrived at by the application of the doctrine of estoppel." *Davis* v. *Bechstein,* 69 N. Y. 440 (25 Am. Rep. 218).

In discussing the rights of a *bona fide* pledgee of warehouse receipts, as against the true owner, which principle, we think, is applicable here, Mr. Jones, in his work on Pledges and Collateral Securities (2 ed.), at Section 309, says:

"Two things must concur to create an estoppel by which an owner may be deprived of his property, by the act of a third person, without his assent, under the rule now considered: 1. The owner must clothe the person assuming to dispose of the property with the apparent title to, or authority to dispose of it; and, 2. The person alleging the estoppel must have acted and parted with value upon the faith of such apparent ownership or authority, so that he will be the loser if the appearances to which he trusted are not real."

If plaintiff, when he delivered these contracts to the Oregon Eilers Music House with the written assignments transferring them to him attached thereto, had been the absolute or general owner of them and not a mere pledgee, his delivery of them to the Oregon Eilers Music House, in itself alone, was not an act through which an estoppel against him would arise, since in the condition they then were they could not be disposed of by the Oregon Eilers Music House without first committing a crime. In the condition they then were he owed no duty to the defendant to not deliver them to his assignor for the purpose of having the payments properly credited, and when he delivered them he conferred upon his assignor no indicia of ownership and no apparent authority to dispose of them; nor was his delivery of them a negligent act from which an estoppel could arise.

5, 6. In law, before an act is negligent, there must be some duty owing to some person and a failure to perform that duty to that person, and to be actionable it must result in some damage to the person to whom the duty is owed. No person owes a duty to anyone to anticipate that a crime will be committed and to act upon that belief: *Baxendale* v. *Bennett*, L. R. 3 Q. B. 525.

The reason why the principle, that where one of two innocent persons must suffer for the wrongful act of another that person should suffer whose negligence has enabled such third person to do the wrong, has no application to a case where the wrong is accomplished through the instrumentality of a criminal act, is that it is the crime and not the negligent act which is the proximate and effective cause of the injury. All the cases which we can find hold that that

principle is not applicable to cases where the loss was occasioned through the instrumentality of a criminal act, and base their reason for so holding upon the fact that it is the crime and not the act of the innocent party which is the proximate and effective cause of the loss: *Walsh* v. *Hunt,* 120 Cal. 46 (52 Pac. 115, 39 L. R. A. 697); *Nash* v. *Moore,* 165 App. Div. 67, (151 N. Y. Supp. 96); *Hill* v. *Jewett Pub. Co.,* 154 Mass. 172 (28 N. E. 142, 13 L. R. A. 193, and note); *Knoxville Nat. Bank* v. *Clark,* 51 Iowa, 264 (1 N. W. 491, 33 Am. St. Rep. 129); *Burrows* v. *Klunk,* 70 Md. 451 (17 Atl. 378, 14 Am. St. Rep. 371, 3 L. R. A. 576); *Holmes* v. *Trumper,* 22 Mich. 428 (7 Am. Rep. 661); *Worrall* v. *Gheen,* 39 Pa. 398; *Merchants of the Staple* v. *Bank of England,* 21 Q. B. D. 160; *Scholfield* v. *Londesborough,* L. R. (1896) App. Cas. 514.

Under the facts involved here the analogy is lacking between this case and cases which hold that the true owner of a stock certificate will be estopped if, after signing his name to the blank transfer on the back thereof, he delivers it for purposes of his own to an agent who, in violation of his trust, fraudulently transfers it to a *bona fide* purchaser.

7. The plaintiff invokes the principle that the assignor of a chose in action can confer no better title upon his assignee than he himself possesses. From this he argues that, these contracts having been assigned to the plaintiff by written assignments absolute in form, the absolute ownership was vested in the plaintiff and that the defendant, even though a *bona fide* purchaser for value and without notice, took them subject to the rights and equities of the plaintiff and acquired only such rights as the Oregon

Eilers Music House had in them at the time of their assignment to defendant.

8. It is a general rule that no title can be acquired from one who has no title and that a *bona fide* purchaser for value from one who has come into possession of a chose in action through the commission of a crime acquires no title to it, and the only exception to this rule is when the chose consists of negotiable securities: *O'Herron* v. *Gray,* 168 Mass. 573 (47 N. E. 429, 60 Am. St. Rep. 411, 40 L. R. A. 498).

We think that plaintiff's contention would be sound if plaintiff, when he delivered these securities to the Oregon Eilers Music House, had been the absolute owner of them, but such is not the fact. The complaint alleges, the proof shows, and it is so stated in plaintiff's brief, that the transaction between plaintiff and the Oregon Eilers Music House, through which the plaintiff acquired these contracts, amounted to a mere pledging of them as security for a debt. The fact that these securities were pledged to plaintiff as security disposes of any contention that plaintiff was the absolute owner of them, for if he was the absolute owner of them he could not hold them as a pledge, but would hold them as owner.

9, 10. All the authorities seem to be in accord that the voluntary redelivery by the pledgee to the pledgor of the thing pledged for a special purpose will not defeat the right of the pledgee, when that purpose has been fulfilled, to recover from the pledgor the pledged property, or to maintain an action against him for a conversion thereof; but if the pledgor, while so in possession of the pledge, sells or transfers it to a *bona fide* purchaser for value and without notice, the pledgee can neither recover it from such purchaser or maintain an action against the latter for

its conversion. Continuance of possession is indispensable to the lien of the pledgee, and when his custody over the pledge is abandoned the security upon it is lost: *Kellogg* v. *Tompson,* 142 Mass. 76 (6 N. E. 860). Possession is of the very essence of a pledge: Pothier, Nantissiment, 8. And if possession be once given up to the pledgor, the pledge, as such, is extinguished: *Cassey* v. *Cavaroc,* 96 U. S. 477 (24 L. Ed. 779, see, also, Rose's U. S. Notes).

11. Plaintiff as pledgee had the right to retain the possession of the pledged contracts until his debt was paid and while he maintained his possession of them his lien was preserved; but when he voluntarily redelivered them to the pledgor, as against a subsequent *bona fide* purchaser from the pledgor, the equities of such *bona fide* purchaser are superior to any equity that the plaintiff had in them, and as against such purchaser for a conversion of them plaintiff is without remedy: *Bodenhammer* v. *Newsom,* 50 N. C. 107 (69 Am. Dec. 775); *Way* v. *Davidson,* 12 Gray (Mass), 465 (74 Am. Dec. 604). See, also, Jones on Pledges and Collateral Securities (2 ed.), Section 47, where the author says:

"If pledged property, which has been redelivered to the pledgor for a special purpose, be sold by him in violation of the agreement under which possession was redelivered to him, the purchaser, having acted in good faith, can maintain his title against the pledgee."

For these reasons the decree of the trial court must be affirmed. Affirmed. Rehearing Denied.