Argued March 17; affirmed March 28, 1939

# ALT *v.* KREBS

(88 P. (2d) 804)

Department 2.

*Robert T. Mautz*, of Portland (Butler & Jack, of Oregon City, and Wilbur, Beckett, Howell & Oppenheimer, of Portland, on the brief), for appellant.

*L. K. Poyntz* and *K. C. Tanner*, both of Portland (Doris Oldenstadt, of Portland, on the brief), for respondent.

LUSK, J.   The defendant, Maud Krebs, appeals from a judgment entered pursuant to the verdict of a jury in favor of the plaintiff, Jessie Alt, for personal injuries sustained by the plaintiff in an automobile accident.

The accident occurred on the evening of March 4, 1937, at about the hour of 7 o'clock on the Mount Hood Loop Highway about thirteen miles east of the town of Sandy in Clackamas county, Oregon.   Due to engine trouble the defendant's car, which was being driven by her in an easterly direction, stalled on the highway close to the right-hand edge of the pavement.   A little later the plaintiff, who likewise was driving in an

easterly direction, rounded a curve a short distance to the west of where the defendant's car was standing and collided with the rear of the defendant's car. There is evidence that the tail-light on the defendant's car was not burning, and the principal ground of negligence charged is that the defendant parked her automobile upon the main-traveled portion of the highway after dark without a rear light.

The defendant assigns as error the ruling of the court below denying her motion for a nonsuit based on the ground that the plaintiff was guilty of contributory negligence as a matter of law. The plaintiff testified that after she rounded the curve and came into a straightaway immediately before the accident, she was blinded by the headlights of an oncoming car. She swore: "I slowed up, and I kind of drove off of the gravel on the edge; well, I heard my tires on the gravel and I thought I wouldn't get over too far, and I stayed on the edge of that gravel because I knew I wouldn't hit this other car" (meaning the car approaching from the east driven by the witness, Majors). She further testified: "I didn't see a thing until Mr. Majors' car—the lights—any of you that have ever drove, when you get the lights to a certain distance you can commence to see again, and I had just put my foot over on the gas when I seen this car in front of me, and I put on the brakes and threw my car the best I could to the right in order to miss hitting Mrs. Krebs' car." She said that she came around the curve at a speed of thirty-five or forty miles an hour, and after being blinded by the lights of the oncoming car she slowed down to about twenty-five miles an hour and was about thirty feet from the defendant's car when she emerged from the rays of the headlights on Majors' automobile. She explained that she was not altogether blinded,

but that she was able to see a distance of about twenty-five feet in front of her car and could see the edge of the pavement at that distance. Asked on cross-examination "to give a rough idea" of her distance from the lights of Majors' car when she first saw them, she estimated that distance at 1500 feet, and testified that at that time the defendant's car was about midway between her and the approaching lights.

The defendant asserts that the plaintiff's own testimony convicts her of contributory negligence as a matter of law because it shows that she was driving an automobile on a public highway for approximately 750 feet at twenty-five miles per hour while blinded by the headlights of an approaching car.

■ The jury was not bound to find that the plaintiff was a distance of 1500 feet from Majors' car when she was first blinded by the rays of its headlights, nor that at that time the defendant's car was 750 feet away from the plaintiff. The plaintiff was asked to give "a rough idea" of the distance from Majors' car, and her answer could have been no more than an approximation. According to her testimony she was unable to see the defendant's car at that time, and hence her estimate of that distance could be little more than a guess. Moreover, Majors testified that when he first saw the lights of the plaintiff's automobile he was about 600 feet distant from them; that the defendant's car was then 50 or 75 feet distant from him; and that he was about 150 feet west of the defendant's car when he heard the crash. He was traveling at the rate of thirty-five or forty miles an hour, according to his testimony, the same speed at which the plaintiff was traveling until she slowed down. Thus, from the time Majors saw the plaintiff's lights until he heard the crash, he traveled, according to his testimony, from 300 to 325

feet. The jury could have found that Majors' evidence was true, and, if so, that the plaintiff did not travel a greater distance than he. She would have covered that distance in about eight seconds. The court is not warranted in declaring that in failing to stop the plaintiff was guilty of negligence as a matter of law. We think it was for the jury to decide whether her conduct in checking her speed and pulling over to the side of the road was or was not that of a reasonably prudent person under the circumstances: *Murphy v. Hawthorne,* 117 Or. 319, 244 P. 79, 44 A. L. R. 1397; *Schassen v. Columbia Gorge Motor Coach System,* 126 Or. 363, 270 P. 530.

Counsel for the defendant have called our attention to a number of cases from other jurisdictions in which it is held that the failure of a motorist to stop his automobile immediately under circumstances similar to those disclosed by the evidence in this case constitutes negligence as a matter of law. Like decisions were cited in the Murphy and Schassen cases, but this court refused to follow them. In the Schassen case it was said:

"We decline to follow the cases which lay down the rule that a driver blinded by the lights of an approaching or stationary car must immediately stop his car. We think the better rule to be that each case must depend on its own state of fact, and as a rule the question of contributory negligence must be submitted to the jury under appropriate instructions." (126 Or. 369).

■■ The plaintiff was not bound to anticipate that the defendant would negligently leave her automobile standing on the main traveled portion of the highway after dark without lights. While she was bound to assume that there might be other traffic on the high-

way, she also had the right to proceed in the belief that other motorists would exercise ordinary care. She was not deprived of all vision by the glare of the oncoming lights, but could see a distance of twenty-five feet; and, assuming her testimony to be true, as we must, the question of her negligence was one, not of law but of fact, to be passed on by the jury.

■ It is further argued that the plaintiff was negligent because, under her own testimony, she was unable to stop her car and so avoid a collision with the defendant's car after she saw it thirty feet ahead of her; that this evidence manifests that she was driving at an excessive rate of speed under the circumstances, was not keeping a proper lookout, and did not have her automobile under control. But this is only another way of saying that it is negligence as a matter of law to drive an automobile at such a rate of speed that it cannot be stopped within range of the driver's vision— a doctrine definitely rejected by this court in *Murphy v. Hawthorne*, supra.

■■ Defendant assigns as error the refusal of the court to give the following requested instruction:

"You are instructed that the laws of the State of Oregon regarding headlamps on automobiles provide as follows:

'(a) The head lamps of motor vehicles shall be so constructed, arranged, and adjusted that, except as provided in subsection (c) of this section, they will at all times mentioned in section 58 and under normal atmospheric conditions and on a level road produce a driving light sufficient to render clearly discernible a person 200 feet ahead, but shall not project a glaring or dazzling light to persons in front of such head lamp.' —Section 55-2603 [Oregon Code Supp. 1935]."

There was a conflict in the testimony as to whether any automobile was approaching the plaintiff immedi-

ately before the accident. Hence the plaintiff's claim that she was blinded by oncoming lights was an issue of fact. Defendant's theory in requesting the instruction was that, in view of this conflict and the fact that plaintiff testified that her headlights were burning, she was entitled, on the issue of keeping a proper lookout made by the answer, to have the jury informed as to how far ahead the plaintiff should have been able to see, having in view the presumption that she had complied with the statute referred to in the requested instruction. A proper instruction on this subject, had it been requested, might well have been given, but the requested instruction, if given, would have left the jury in the dark because it referred to subsection (c) of the statute and to "the times mentioned in section 58", but failed to explain either of these references. Hence, the instruction would likely have caused confusion. Error cannot be predicted upon the refusal to give an instruction which does not clearly, concisely and accurately cover the point in issue: *Diller v. Riverview Dairy*, 133 Or. 442, 448, 288 P. 401. We think, therefore, that the assignment lacks merit.

The only other assignment of error is based upon an exception taken by the defendant to the following instruction given by the court:

"If you allow damages to the plaintiff you may take into consideration any impairment of her power to work as shown by the evidence. If you believe from a preponderance of the evidence her injuries, if any, have lessened that power, then she would be entitled to recover damages therefor."

The complaint made is that this is an instruction upon earning capacity, and there is no evidence of the plaintiff's earnings.

■■ It is true, as defendant urges, that the issue of impairment of earning capacity as an element of damages ought not to be submitted to the jury unless there is testimony of the injured person's earnings: 17 C. J. 897, § 196. But a distinction may properly be drawn between loss of earning capacity and impairment of an individual's power to work. The latter, as stated in 17 C. J. 784, § 108, is a "species of pain and suffering". In the case of *District of Columbia v. Woodbury,* 136 U. S. 450, 34 L. Ed. 472, 10 S. Ct. 990, a physician, suing for damages for personal injuries, was permitted to show that his injury incapacitated him from contributing articles to medical journals, a pursuit which he had theretofore followed, but from which he derived no compensation. The supreme court said as to the competency of this evidence:

"This evidence was competent upon the issue as to damages. It indicated that the nature of the plaintiff's pursuits, and, in connection with other evidence showing the serious and permanent character of the injuries received by him, that his capacity to prosecute his studies, and to follow his ordinary pursuits, was impaired. The defendant insists that the evidence should have been rejected because it did not appear that the plaintiff had derived any income from his contributions to medical journals. This is not a sound view of the question. Even if those contributions were made without compensation, his inability to continue them by reason of the injuries in question was a proper element in the inquiry as to damages. That fact tended to show the extent of both his mental and physical suffering, resulting from the injuries received. All evidence tending to show the character of his ordinary pursuits, and the extent to which the injury complained of prevented him from following those pursuits, was pertinent to the issues. *Wade* v. *Leroy,* 61 U. S. 20 How. 34 [15:813]; *Nebraska City* v. *Campbell,* 67 U. S. 2 Black, 590 [17:271]; *Vicksburg & M. R. Co.* v. *Putnam,*

118 U. S. 545, 554 [30:257, 258]; *Ripon* v. *Bittel,* 30 Wis. 614; *Ballou* v. *Farnum,* 11 Allen, 73; *Caldwell* v. *Murphy,* 1 Duer, 233, 11 N. Y. 416. The authorities all agree that in cases of this character much latitude must be given to juries in estimating the damages sustained by the person injured. Physical suffering, resulting from such injuries, is necessarily attended by mental suffering in a greater or less degree. And as said in *Kennon* v. *Gilmer,* 131 U. S. 22, 26, 27 [33:110, 112], 'The action is for an injury to the person of an intelligent being; and when the injury, whether caused by willfulness or negligence, produces mental as well as bodily anguish and suffering, it is impossible to exclude the mental suffering in estimating the extent of the personal injury for which compensation is to be awarded.' *Illinois Cent. R. Co.* v. *Barron,* 72 U. S. 5 Wall. 90, 105 [18:591, 594]; *Pennsylvania & O. Canal Co.* v. *Graham,* 63 Pa. 290; *Smith* v. *Holcomb,* 99 Mass. 552; *Holyoke* v. *Grand Trunk R. Co.* 48 N. H. 541; *Stockton* v. *Frey,* 4 Gill, 406; *Smith* v. *Overby,* 30 Ga. 241; *Cox* v. *Vanderkleed,* 21 Ind. 164; *Lynch* v. *Knight,* 9 H. L. Cas. 577.''

■ In this case the plaintiff testified that as a result of her injuries she was no longer able to do housework and restaurant work, as she had previously. We think that no error was committed in submitting to the jury the question of impairment of plaintiff's capacity to work. Doubtless it would not have been error to refuse it, since the subject was covered by the general instruction preceding it on physical and mental suffering, but there is no reason to believe that it was considered by the jury as a direction to assess damages for lost earnings.

The judgment is affirmed.

RAND, C. J., and BELT and BAILEY, JJ., concur.