Argued February 7, reversed October 23, 1957

# OREGON MUTUAL FIRE INSURANCE CO. *v.*
## MAYER ET AL
### 316 P. 2d 805

*Willard L. Cushing,* McMinnville, argued the cause for appellant. With him on the brief were Marsh, Marsh & Dashney, McMinnville.

*Robert H. Foley,* Bend, argued the cause for respondents. On the brief were De Armond, Goodrich, Foley & Gray, Bend.

Before PERRY, Chief Justice, and LUSK, WARNER and McALLISTER, Justices.

PERRY, C. J.

The plaintiff, as subrogee, brought this tort action against the defendants to recover for a loss paid under a fire insurance policy issued to its insured. The jury returned a verdict for the defendants and the plaintiff appeals.

The plaintiff's assured, Ronald D. Fowler and wife, operated a service station in the city of Bend, Oregon, and upon the premises of the assured was located a restaurant leased to a third party. A fire occurred on these premises and as a result of the fire plaintiff

paid the appraised loss to its assured and seeks recovery from the defendants in this action.

At about 11 a. m. on October 16, 1950, the defendant William Mayer, a gasoline tank driver and the agent of the other defendants, who were gasoline distributors, telephoned Mr. Fowler and asked him if he needed any gasoline. Fowler stated that he could use some and, after being requested by the defendant Mayer to use the measuring stick, Fowler called Mayer and advised him that he could take 325 gallons of gasoline. Defendant Mayer metered into a tank on his truck 325 gallons of gasoline and later made delivery at the Fowler Service Station. In making the delivery, defendant Mayer placed a hose from his truck to the fill pipe of the underground tank at the filling station and, after starting the gasoline to flowing from the truck to the underground tank, went into the restaurant for a cup of coffee. While he was in the restaurant, and visiting with some friends, the underground tank filled and overflowed out of the fill pipe. The fill pipe was located just a few feet from the front door of the restaurant and the overflowing gasoline, because of the grade from the fill pipe, ran under the front door and into the restaurant where it was ignited by an oil heater. The only dispute in the evidence is whether Fowler said the tank would hold 325 gallons, or whether he said it would hold *about* 325 gallons of gasoline.

The city of Bend at the time of this occurrence had in effect an ordinance with respect to tankwagon deliveries of gasoline which stated in part as follows:

> "Section 4. The operator of any vehicle delivering petroleum products shall remain at the control valve of such vehicle at all times while such products are being discharged therefrom."

The defendants allege that Fowler was contributorily negligent in that he carelessly and recklessly measured the tank and notified the defendant Mayer that the tank would hold 325 gallons of gasoline when it would not, and that "Fowler knew of the dangerous characteristics of gasoline, and knew or should have known of the danger involved in the possible overflow of said substance from the filler pipe, due to the hazardous positioning of the same in close proximity to the oil heater."

The plaintiff assigns as error the refusal of the trial court to grant (1) its motion "to strike the defense of contributory negligence," (2) its motion to withdraw this issue from consideration of the jury, and (3) its motion for an order entering a judgment for the plaintiff non obstante veredicto.

Since these facts are not in dispute, the issues present the single question of whether or not under the circumstances of this case Mr. Fowler's alleged negligence was negligence and, if so, was it a proximate cause contributing to his injury?

■ The fact that the fill pipe was located in such a position that if the tank was overfilled the overflow of the gasoline from the fill pipe might run into the restaurant and might be ignited by coming in contact with the oil stove therein could not be considered as a proximate cause in the legal sense. It was at most a passive condition, not inherently dangerous in itself either to the plaintiff or the public, and could become dangerous only through the intervening negligence of one in permitting the tank to overflow in the process of servicing the tank with the inflammable gasoline. *Aune v. Oregon Trunk Railway,* 151 Or 622, 51 P2d 663; *Leavitt v. Stamp,* 134 Or 191, 293 P 414; 65 CJS 649, Negligence § 103.

In considering the question before us, we must determine the boundaries of the legal liability of Fowler based upon the doctrine of foreseeability as applied by the courts in the law of torts. In 2 Harper and James, The Law of Torts, 1141, Accidents § 20.5(5) it is stated:

"Where there are forces intervening between defendant's act and plaintiff's injury courts generally tend to invoke the test of foreseeability. To the eye of philosophy the distinction between intervening and pre-existing causes or conditions is tenuous if it exists at all. The philosophic determinist would see no essential distinction between the gasoline vapor already in the hold of the good ship Thrasyvoulos before the ill-starred stevedore dropped the plank, and the hurricane or flood that arose *after* defendant's negligence left plaintiff's property vulnerably exposed to such a hazard, or for that matter the malpractice of the surgeon which caused gangrene to set in in plaintiff's wound. To the determinist the stage for all these things was irrevocably set long before any time that matters in this discussion. Of course the law generally —certainly the law of fault—does not accept any such philosophy. But even those who reject determinism can see that a wind or storm or flood was often inevitably in the making before defendant's negligence took place, though it appeared on the immediate scene thereafter. Yet even such considerations are generally too refined for the law's roughhewn tests. By and large external forces will be regarded as intervening if they appear on the scene after defendant had acted unless perhaps their pending inevitability at the time of defendant's negligent act or omission is made crystal clear. And when a new force (for which defendant is not responsible) 'intervenes' in this crude sense to bring about a result that defendant's negligence would not otherwise have produced, defendant is generally held for that result only where the interven-

ing force was foreseeable. As many cases put it, a new and unforeseeable force breaks the causal chain. A better analysis is to regard the intervening force as a risk or hazard and to ask whether its foreseeability was such as to make defendant's act negligent with regard to it. It is better, in other words, to inquire whether defendant's duty extends to such a risk as the intervening force, because the question in this form focuses attention on a more significant and less fictitious problem than that of cause." (Italics theirs.)

We will not concern ourselves with a discussion of whether or not foreseeability of the actor as a reasonably prudent person is an element of negligence or a factor in determining proximate cause, as the result in this case would be the same.

The test of the legal efficacy of proof of defendants' allegations of contributory negligence lie in determining the tendency of Fowler's conduct to affect the conduct of the defendants.

■ There is no evidence in this case from which even an inference could be drawn that Fowler intended to cause the particular conduct of the defendants.

When the conduct of a person is not to intentionally cause certain conduct, 2 Restatement, Torts, 827, Negligence § 303d, makes this observation:

"* * * The actor may not intend the third person to act in any particular way. If so, the actor's negligence lies in the fact that he does or should realize that his conduct may cause the third person so to act, or in the further likelihood that the third person may do the act in a careless manner. In such case, the actor's negligence depends upon the extent to which he is required to realize and take into account the tendency of mankind or of the particular person to act improperly (see § 302)."

There is no evidence that Fowler knew that the defendant Mayer was an irresponsible person. Therefore, under this rule, which we approve, Fowler's negligence is to be measured by "the extent to which he is required to realize and take into account" the acts of Mayer in carrying out the purchase and sale of the gasoline. There is no evidence that Fowler knew of a customary manner in which deliveries of gasoline were made, but, in any event, the defendant Mayer for safety reasons was required to make delivery of the gasoline into the underground tank in accordance with the commands of the city ordinance, and this set the standard of the defendant Mayer's conduct to be foreseen by Fowler.

■ A person, in the absence of notice to the contrary, is not required to anticipate that another will act in a negligent manner or will violate the law. 1 Sherman and Redfield, Negligence (rev ed) 263, § 111; see also, *Senkirik v. Royce,* 192 Or 583, 235 P2d 886; *Alt v. Krebs,* 161 Or 256, 88 P2d 804; *Lovett v. Gill,* 142 Or 534, 20 P2d 1070.

In *Herring v. Springbrook Packing Co.,* 208 Or 191, 200, 299 P2d 604, 300 P2d 473, we quoted the following with approval:

> " 'Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. It is always a question of what reasonably prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated.' Id., p 50. And 'Ordinary care of a reasonably prudent man does not demand that a person should prevision or anticipate an unusual, improbable or extraordinary occurrence, though such happening is within the range of

possibilities.' Burnside v. Gulf Refining Co., 166 Miss 460, 470, 148 So 219."

■ The conduct of Fowler would affect the conduct of the defendant Mayer only to the extent of advising him of the amount of gasoline he should place in his truck for the purpose of making an adequate delivery and could not affect the manner of making the delivery to the underground tank.

The trial court erred in submitting the question of Fowler's contributory negligence to the jury, and the judgment is, therefore, reversed.

McALLISTER, J., dissenting.

This is an action brought by the plaintiff, Oregon Mutual Fire Insurance Company, a corporation, as subrogee, to recover the amount of an insurance loss paid to its insureds Robert D. Fowler and wife, as a result of a fire which damaged a service station operated by the Fowlers at Bend. Plaintiff alleged that the fire was caused solely by the negligence of the defendant Tidewater Associated Oil Company, a corporation, and its agents. The defendants charged Fowler with negligence contributing to the cause of the fire. The jury returned a verdict for the defendants and plaintiff appeals.

The plaintiff assigns as error (1) the denial of the motion to strike the defense of contributory negligence from the answer, (2) the submission to the jury of the issues of contributory negligence and promixate cause, and (3) the denial of its motion for a judgment notwithstanding the verdict.

The dual question raised by this appeal is whether Fowler was negligent and if so, whether his negligence was a proximate cause contributing to his damage. In my opinion, these questions were properly submitted to the jury for determination.

As stated in plaintiff's brief, "There is little, if any, dispute in the evidence." Fowler and his wife had operated the service station for about six and a half years. They leased one-half of the service station building to a tenant who operated a restaurant therein. The gasoline sold by Fowler was delivered by the defendant into an underground storage tank. The fill pipe for this tank was located between the service station door and the restaurant door in a small entryway which separated the two rooms. There is evidence that the concrete floor sloped slightly downward from the fill pipe toward the restaurant. According to Fowler, an O'Cedar mop, 16 or 18 inches wide, "was used quite often to put against the door of the cafe at times of filling to keep the fumes from going under."

The underground tank at the service station had been calibrated at 550 gallons but held at little more than that. A stick specially marked to measure the contents of the underground tank was kept at the service station and used for that purpose.

About 11 o'clock a. m. on October 16, 1950, the defendant's tank truck driver, William Mayer, telephoned to ask Fowler if he needed any gasoline. Upon receiving an affirmative reply, Mayer asked Fowler to "stick" the tank to determine how much gasoline was needed. Fowler measured the tank and then, according to Mayer, told Mayer that he wanted 325 gallons. Fowler testified that he ordered *about* 325 gallons and this difference constitutes the only notable conflict in the testimony. Fowler testified that this order for gasoline was made "in the customary way." Mayer did not deliver the gasoline for approximately two hours, during which interval Fowler sold an undisclosed amount of gasoline from his underground tank.

Shortly after 1 o'clock p. m., at the plant of de-

fendants, Mayer measured 325 gallons of gasoline into an empty compartment of his truck and drove to Fowler's service station. Mayer described in detail the method used in metering the gasoline into his delivery truck. Although in its brief plaintiff contends that Mayer might have made an error in measuring the gasoline at the bulk plant, no evidence tending to prove this contention was offered at the trial.

At the station Mayer placed the nozzle of the discharge hose in the fill pipe and opened the valve on the truck which permitted the gasoline to flow from the truck into the underground storage tank. The truck was equipped with a meter but from the evidence it appears that this was not customarily used in making deliveries to the service station. Apparently the quantity of gasoline needed was determined by "sticking" the underground tank and then the desired quantity was measured into a compartment of the tank truck at defendant's bulk plant. The gasoline was then dumped into the underground tank at the service station without further metering. There was no way to shut off the flow of gasoline at the nozzle end of the discharge hose and the only shut off valve was at the point where the discharge hose was attached to the truck. After the valve on the truck was closed, the gasoline in the hose, estimated to be four or five gallons, would continue to flow out.

After the gasoline had started to flow into the underground tank, Mayer went into the restaurant, ordered a cup of coffee and engaged in a conversation with some friends. Mayer's conduct in going into the restaurant and remaining there was in direct violation of an ordinance of the city of Bend, which required the operator of any vehicle delivering petroleum products "to remain at the control valve of such vehicle

at all times while such products are being discharged therefrom." While Mayer was in the restaurant the tank overflowed and gasoline ran from the fill pipe and under the door into the restaurant where the gasoline or the vapors therefrom were ignited by a circulating oil heater located inside the restaurant door.

When Mayer's attention was called to the liquid flowing under the restaurant door, he realized that the tank was overflowing and shut off the control valve at the truck. It was later determined that the tank on the truck still contained about 26 gallons of gasoline. How much gasoline overflowed is not disclosed by the evidence.

That Mayer was negligent and that his negligence was a proximate cause of the fire can hardly be questioned. The principal question presented is whether Mayer's negligence was the sole proximate cause of the fire or whether negligence of Fowler also contributed thereto.

That Fowler also was negligent can hardly be questioned. The definition of negligence consistently used by this court was stated in *Stout v. Madden & Williams*, 208 Or 294, 309, 300 P2d 461, as follows:

> "It is well-established in this state that for a cause of action for negligence to exist there must be (1) a legal duty to use care, (2) a breach thereof, and (3) damage to the plaintiff which (4) was proximately caused by the breach. Schumann v. Bank of California, N.A., 114 Or 336, 233 P 860, 37 ALR 1531; Chambers v. Everding & Farrell, 71 Or 521, 136 P 885, 143 P 616.  *  *  *"

We are here concerned with contributory negligence, but as we said in *Leap v. Royce et al.,* 203 Or 566, 574, 279 P2d 887: "*  *  * the standards and tests for determining contributory negligence ordinar-

ily are the same as those for determining negligence, and the rules of law applicable to the former are, in general, applicable to the latter. The distinction lies in that negligence involves a risk of injury to another whereas contributory negligence involves a risk of injury to the one injured. * * *"

Fowler might have refused to measure the gasoline in the tank but when he agreed to do so he assumed a duty to perform the act with reasonable care. Even a volunteer who undertakes to perform an act for another assumes the duty to perform the act with reasonable care. The rule is concisely stated by Cardozo, J. in *Glanzer v. Shepard,* 233 NY 236, 135 NE 275, as follows:

"* * * It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all. * * *"

To the same effect see *Kennedy v. Hawkins,* 54 Or 164, 102 P 733, *Smith v. Twin State Improve. Corp.,* 116 Vt 569, 80 A2d 664, 25 ALR2d 1193 and 2 Restatement 873, Torts § 323 (1) and Comment (a) thereto. Fowler was not a volunteer but was acting in furtherance of his own business. The purchase of gasoline by Fowler for resale to his customers was a matter of concern to him as well as to the defendants.

That Fowler breached the duty to use reasonable care is apparent. With the equipment at hand he could have accurately measured the quantity of gasoline that the tank would hold. One who measures inaccurately when he has the means, ability and opportunity to measure accurately has not made the measurement with reasonable care. Fowler either measured the tank inaccurately or carelessly ordered more gasoline than the tank would hold and in either event, he was negli-

gent. The potential danger of escaping gasoline is a matter of common knowledge and was certainly known to Fowler as evidenced by his testimony about the use of the mop to keep gasoline fumes out of the restaurant. All of us learn at an early age that containers of liquid will overflow unless care is used in filling them. In addition, Fowler knew of the location of the fill pipe, the restaurant stove, the slope of the floor and other conditions existing on his premises. No excuse or explanation is offered by Fowler for having measured the tank inaccurately or for having ordered more gasoline than the tank would hold.

The most difficult question is whether the negligence of Fowler proximately contributed to his damage. In considering this question we are confronted with the obvious conclusion that if Fowler had accurately measured the tank and ordered the proper amount of gasoline, the fire would probably not have occurred. The causal connection between ordering more liquid than the container would hold and the overflow of the tank must be apparent to all. Under these circumstances the question of proximate cause was a question of fact for the jury, unless we can say as a matter of law that the negligence of Mayer was an intervening, efficient, proximate cause of the damage. In my opinion, we can not so hold as a matter of law.

Three distinct steps were required in the method customarily used to fill the underground tank: (1) measuring the tank, (2) measuring the required amount of gasoline into the tank truck at the bulk plant, and (3) delivering the gasoline into the underground tank at the service station. These three steps were interrelated and each required the exercise of reasonable care. When Fowler in the customary manner measured the tank and ordered a particular quantity of gasoline, he

knew that Mayer would rely on that information. Fowler obviously intended that Mayer should rely on that information.

I think the rule applicable in this case is contained in 2 Restatement 1184, Torts § 439, as follows:

"If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's * * * tortious * * * act is also a substantial factor in bringing about the harm does not protect the actor from liability."

Plaintiff calls attention to the rule that a person is not bound to anticipate negligence on the part of another and has a right to assume that others will obey the law, citing 34 Am Jur 871, Negligence § 192. It is difficult to see how this rule can help the plaintiff in this case. The negligent person can not use this rule to avoid responsibility for the natural and probable consequences of his own negligent act. See *Johnson v. Updegrave*, 186 Or 196, 206 P2d 91.

It can be persuasively argued that if Mayer had remained at the control valve of the vehicle he could have told by the escaping of air from the fill pipe that the tank was nearly full and shut the valve, or at least could have closed the valve as soon as the tank started to overflow and before a sufficient quantity of gasoline had escaped to cause the damage. However, this argument raises questions of fact involving the location of the control valve, the speed with which it could have been closed, the length and size of the hose, the amount of gasoline which would flow from the hose after the valve was shut and other questions of fact. In my opinion, these questions of fact were properly submitted to the jury for determination. As stated in

*Celorie v. Roberts Bros., Inc.*, 202 Or 671, 276 P2d 416:

> "This court has stated and restated many times that the question of proximate cause is one for jury determination unless the facts of the case are such that the court can say affirmatively that all reasonable minds must reach the same conclusions therefrom. It is unnecessary to cite our many decisions to that effect. It is a rare case, indeed, where proximate cause is decided as a matter of law.  *  *  *"

The majority base their decision upon the doctrine of foreseeability and quote 2 Harper and James on Torts 1141, § 20.5 (5). It is interesting to note that the same authors state, at page 1146:

> "*  *  * One other point should be noted here. There are cases where defendant's wrong would not have caused plaintiff's injury if some third person had taken intervening precautions which he was legally bound to take. In such a case it might be said that the third person's negligent omission intervened between defendant's wrong and the injury. Where that is the case foreseeability is less likely to be used as a test of exclusion of the original defendant's liability than where an affirmative act intervenes."

In the footnote to the above text, the authors state:

> "In the majority of cases the original wrongdoer is held liable for the ultimate consequences of his act even though some third person, by performing his duty, might have prevented these consequences.  *  *  *"

It is an invasion of the province of the jury to hold as a matter of law that the negligence of Fowler did not contribute in any degree to cause the fire. In my opinion the judgment should be affirmed.