Argued May 6, reversed and remanded June 15, petition for
rehearing denied October 18, 1966

# BABLER BROS., INC. *v.* PACIFIC INTER-MOUNTAIN EXPRESS CO.

415 P. 2d 735

*Kaye C. Robinette* and *John Gordon Gearin,* Portland, argued the cause for appellant. With them on the briefs were McColloch, Dezendorf & Spears, Portland.

*Loren H. Russell,* Salem, argued the cause for respondent. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson, and Wayne A. Williamson, Portland.

Before McALLISTER, Chief Justice, and SLOAN, GOODWIN, HOLMAN and HAMMOND, Justices.

GOODWIN, J.

This is an action for damages sustained when gasoline exploded while being discharged from defendant's truck into plaintiff's storage tank. The trial court, sitting without a jury, found for plaintiff. Defendant appeals.

Babler is a highway-construction company; defendant is a common carrier. Shell Oil Company, not a party in this litigation, sold gasoline to Babler. Babler's storage tank was furnished by Shell. Shell also furnished a calibrated measuring stick and a chart, which, when properly employed, were supposed to provide a reasonably accurate measurement of the con-

tents of the tank at any given time. The tank was assumed by all concerned to be "a 10,000 gallon tank."

On the day of the explosion and fire, Babler had ordered "a tankful" of gasoline from Shell. Shell had engaged defendant to deliver the order. Defendant's truck, loaded with 8,250 gallons of gasoline, arrived at Babler's storage site. The driver, a Mr. Gurnsey, asked Babler's foreman, a Mr. Negus, to "stick" the tank. Mr. Negus measured the contents of the tank, and estimated them to be 1,000 gallons. Mr. Gurnsey apparently assumed that he could safely pump his whole load into Babler's tank, with room to spare. The gasoline was pumped out of the truck by means of a gasoline-driven pump mounted on the storage tank. (By using its own pump, Babler saved a half cent on each gallon of gasoline.)

After one of Babler's employes had helped start the pump engine, about an hour elapsed while some 6,575 gallons were discharged from defendant's truck into the storage tank. Mr. Gurnsey then decided to check on the rate at which the storage tank was filling, and climbed a ladder to peer into the top of the tank. By the time he reached the top of the storage tank, gasoline had started to overflow. The driver yelled for a Babler employe to turn off the pump, and scrambled down himself to shut off the valve at the truck. The overflow cascaded down over the gasoline engine that powered the pump. Before either man was able to stop the flow of gasoline, contact between the pump engine and the overflow gasoline produced an explosion. The Babler employe was injured, and other loss and damage resulted. The amount of damage is not an issue in this case. The question is whether the defendant is liable.

In its answer, the defendant denied that its driver had acted negligently. The defendant contended that the fire was caused solely by the negligence of Babler's employes. Defendant accordingly counterclaimed for reimbursement of a settlement it had made with the injured Babler employe.

■ The trial court found that defendant's driver had negligently failed to keep a reasonable watch over the rate at which the storage tank was filling. The evidence of the driver's failure to exercise due care presented a question for the trier of fact. An assignment of error asserting that the defendant was free from negligence as a matter of law is therefore without merit. The trial court's findings also disposed of the counterclaim.

The principal remaining questions concern Babler's contributory negligence. If the trial court treated negligence and causation as questions of fact, there is then a subordinate issue concerning the correctness of the findings made by the trier.

The conceptual difficulties concerning tort causation recur in any case when it seriously can be argued that conduct which in fact may have played a substantial part in causing the harm is, nonetheless, not a "proximate," or legally consequential, cause of the harm. As Dean Prosser puts it:

> "The term 'proximate cause' is applied by the court to those more or less undefined considerations which limit liability even where the fact of causation is clearly established * * *." Prosser, Torts 282 (3d ed 1964).

■ Ordinarily, an actor's conduct, be it negligent or otherwise, occurs in combination with the conduct of others or with conditions which exist independently

of the conduct in question. In the run of negligence cases, most of which never reach appellate courts, the factual inquiry whether the actor's conduct was a substantial factor in producing the harm is relatively uncomplicated. The litigants concentrate instead on the issue of negligence. Accordingly, it makes little real difference, in most cases, whether the ultimate issue of liability is submitted to the jury in terms of "proximate cause," "legal cause," or "responsible cause." More or less by default, courts have settled upon "proximate cause" as an opaque way of telling the jury that conduct can cause harm, and can be negligent conduct, and yet might not, in every case, justify the imposition of legal consequences upon the actor. See, e.g., *Sworden v. Gross,* 243 Or 83, 409 P2d 897 (1966); *Mezyk v. National Repossessions,* 241 Or 333, 405 P2d 840 (1965). Courts do not, however, shed much light on the tests the jury should use in the difficult cases. Probably in no other subdivision of tort law have courts been so adept at "hiding the ball." See discussion of the problem in Probert, *Causation in the Negligence Jargon,* 18 U Fla L Rev 369 (1965); and *Dewey v. A. F. Klaveness & Co.,* 233 Or 515, 379 P2d 560 (1963).

The facts of the case at bar illustrate the problem. The supplying of misleading information was at least one of the causes of the fire which caused the harm in this case. There was, theoretically, a question of fact whether the person supplying the misinformation used reasonable care, and there was either a question of law or a question of fact whether that conduct, if negligent, was the kind of conduct for which the law ought to impose liability.

The trial judge decided, in effect, to dispose of the problem of "proximate cause" as a matter of law.

He believed himself required to follow that course by our decision in *Oregon Mutual Ins. Co. v. Mayer,* 211 Or 556, 316 P2d 805 (1957). In that case, a service station operator had advised a gasoline distributor that he "could take 325 gallons." The distributor thereupon metered 325 gallons into his truck, and proceeded to the service station. While his truckload was flowing into the station storage tank, the distributor sipped coffee in a nearby restaurant. The storage tank overflowed, causing gasoline to run into the restaurant. The gasoline ignited when it came into contact with an oil heater. When the service-station operator brought action for the resulting harm, the defendant alleged that the plaintiff was contributorily negligent in furnishing misleading information. This court held that the plaintiff was under no duty to guard against the risk that the defendant would fail to exercise proper care in filling the storage tank. The opinion also implies that even if the plaintiff was negligent, his negligence was not the proximate cause of the harm, plaintiff's negligence having been superseded by defendant's negligence. The dissent would have accepted the jury's determination that the plaintiff had also been negligent and that his negligence had been an additional "proximate cause" of the fire.

We believe, upon further analysis, that *Oregon Mutual Ins. Co. v. Mayer* should be overruled. The holding seems inconsistent with our more recent decisions which have held that ordinarily it is for the trier of fact to say whether (a) the conduct complained of was a substantial cause of the harm, and (b) whether the conduct in question was negligent. See, e.g., *Sworden v. Gross,* supra; *Hills v. McGillvrey,* 240 Or 476, 482, 402 P2d 722 (1965). This approach will, in most cases, avoid the conceptual debate about "proxi-

mate" cause, and will focus upon the proper function of the jury. See concurring opinion in *Dewey v. A. F. Klaveness & Co.*, 233 Or at 519.

We hold that in the case before us the intermingled questions of the plaintiff's breach of duty (negligence) and the causal relation between the plaintiff's conduct and the harm that occurred were for the trier of fact to determine as questions of fact. We now return to the peculiar problems presented by the trial court record.

Since there was no jury, the trial judge simultaneously performed two functions. In so doing, he decided the ultimate issue of contributory negligence as follows:

"VIII.

"Plaintiff was not negligent in the respects charged by defendant in its further separate affirmative answer and defense and counterclaim that was a proximate cause or that contributed to the accident and any damage sustained."

The quoted finding was prepared by plaintiff in accordance with a written opinion which the judge sent counsel after the trial. The opinion contains the following:

"* * * * *

"If plaintiff was negligent, we must look to specifications (F) and (G).

"Specification (F) charges plaintiff with improperly measuring the gasoline in said tank * * *. Based on Mr. Negus' measurement and calibration, there was substantial error, either in his measurement or calibration, or both. From this mistake, Mr. Negus' disclosure to Mr. Guernsey of the balance remaining in said storage tank before

commencing to unload served to give him false and incorrect information.

"This brings us to the question whether plaintiff's negligence under specification (f) and (g) of defendant's Second Amended Answer and Counterclaim contributed to the proximate cause of the accident.

"\* \* \* \* \*

"In determining whether plaintiff's initial negligence would carry over to join with defendant's negligence to show as the proximate cause of the accident, we must first examine the controlling facts on the question of foreseeability.

"\* \* \* \* \*"

The opinion proceeds to show that the trial judge "found" the plaintiff negligent, but that *Oregon Mutual Ins. Co. v. Mayer* foreclosed him, as a matter of law, from characterizing the planitiff's negligence as a "proximate cause" of the harm. Accordingly, he instructed counsel to prepare the quoted "findings of fact."

Under a correct distribution of the functions of judge and jury in a jury trial, a properly instructed jury would have been permitted to find that the plaintiff's conduct was at least one of the causes of the fire. The jury likewise would have been asked to determine whether or not to characterize the plaintiff's conduct as negligent conduct. See *Dewey v. A. F. Klaveness & Co.,* 233 Or at 542.

This brings us to the ultimate question in this appeal. As in *Dewey v. A. F. Klaveness & Co.,* there was no jury. The trial record shows that the judge was led, by *Oregon Mutual Ins. Co. v. Mayer,* into applying an incorrect rule of law, i.e., holding as a matter of law that the negligence of the plaintiff was not a "proximate cause" of the harm. Does such an

error require reversal? It is argued in support of the judgment that the finding of fact, standing alone, is one which the court might properly have made. A jury could have exonerated plaintiff of contributory negligence. Therefore, it is argued, the trial court's decision accomplishing the same permissible result ought to be affirmed. The analogy between judge and jury as triers of fact breaks down, however, when it is recalled that a jury verdict is good only if the jury was properly instructed. When the record discloses that the jury applied the wrong law to the problem, the verdict cannot stand.

■ Where an error of law is shown to have influenced the court trying a case without a jury, reversal is equally necessary. See *Watson v. Dodson,* 238 Or 621, 395 P2d 866 (1964). In that case a trial court had expressed the belief that there was no discretionary choice open. When it appeared that judicial discretion could have been exercised, even though either choice would have been affirmed on appeal, the failure of the trial court to exercise a choice was deemed reversible error.

In the case at bar, if a judge had instructed a jury that the plaintiff's negligence could not, as a matter of law, be a proximate cause of the harm, the case would be in the same posture as it is in now. In such a situation, a new trial could not be avoided.

Reversed and remanded.