Argued June 4, reversed and remanded August 8, 1974

# FIREMAN'S FUND AMERICAN INSURANCE COMPANIES, *Respondent, v.* PACIFIC POWER & LIGHT COMPANY, *Appellant.*

525 P2d 157

*Ivan Lewis Gold,* Portland, argued the cause for appellant. On the briefs with him were Rives, Bonyhadi & Drummond and Hardy Myers, Jr., Portland.

*Kent C. Whitaker,* of Whitaker & Whitaker, P. C., Portland, argued the cause and filed the brief for respondent.

TONGUE, J.

This is an action by an insurance company on a subrogated claim of $14,300 for damages by fire to a mobile home insured by it. The case was tried by the court, sitting without a jury. Defendant appeals from a judgment for plaintiff in the full amount of the claim.

Defendant assigns as error the striking from its answer of affirmative defenses alleging that negligence of plaintiff's insured was the cause of the damage and the refusal of the trial court to consider evidence to that effect. Defendant also assigns as error the striking from its answer of affirmative defenses alleging that third persons had performed duties which otherwise might have been imposed upon defendant and the refusal of the trial court to consider evidence to that effect.

*The facts.*

On December 7, 1971, the electrical power went out at the home of Jesse Roberts in Weston. In response to a call from Mrs. Roberts two of defendant's employees checked the transformer on a pole near the Roberts' home, from which power was supplied to both the Roberts' home and that of plaintiff's insured, Mr. Lyons.

Defendant's line foreman found that the transformer fuse had "blown" so as to cut off power to both houses. When he attempted to install a new fuse,

the replacement fuse immediately "blew out" with a loud "pop," "just like a shotgun." At the same time, defendant's line foreman saw a "puff of smoke" come from the "weatherhead" (a conduit through which electrical wires enter a building) on the top of the Lyons' mobile home. He then cut the service wires to the Lyons' house and re-fused the transformer so as to restore power to the Roberts' home.

Defendant's line foreman then climbed down from the pole and joined defendant's truck driver and Dan Roberts, the neighbor's son, in checking the Lyons' house for the purpose of determining whether there was a fire inside that house. The line foreman testified that the "puff of smoke" indicated "a short some-place" and one that "had to be" in the Lyons' house and could have been caused by a fuse "blowing." He also testified that although such a "pop" and the "puff of smoke" did not always indicate a fire, it would be a "sign of some kind of combustion."

Plaintiff also offered testimony of an electrical engineer that the "puff of smoke" was caused by "an accidental contact of wires somewhere," which "fuses them together," causing an intense amount of heat of sufficient temperature to cause a fire; that the smoke indicated that "there had to be combustion of some material" and that this would be an "indication" of fire. The same witness testified that a "follow through" is "indicated any time you see smoke"; that entry should then be made into the house, and that the "puff of smoke undoubtedly indicated electrical failure and combustion—sufficient temperature to cause a fire."

Upon checking the Lyons' mobile home defendant's employees found that no one was there. The

house was locked and its blinds were drawn, so that defendant's employees were unable to enter or to see inside. After checking the weatherhead and trying to look into the house, defendant's employees could not smell any smoke or find any "indication" of fire and were "satisfied that everything was all right" and that "everything was done that could be done."

Dan Roberts, the 25-year-old son of Jesse Roberts, was also present at that time. He also saw the "puff of smoke." He and his father also tried unsuccessfully to get inside the Lyons' mobile home to see if a fire had been started. Jesse Roberts then told defendant's line foreman that he would try to get a key to the house from one of the neighbors. He then tried unsuccessfully to do so. When he returned defendant's employees were "still there." According to defendant's line foreman, however, Mr. Roberts "said he would try to get in there and try to find what caused this to blow."

Defendant's employees then left. It was then "around noon." According to the testimony of Dan Roberts, a period of at least "20 minutes or so," as an "estimate or guess," had then elapsed from the time when they first arrived.[1] They then drove "downtown," half a mile away, where defendant's line foreman called defendant's dispatcher and then ate lunch in the truck. The dispatcher was told that they had re-fused the transformer; that it "blew"; that "we had to re-fuse it again"; and that they had disconnected service to the Lyons' house. No mention was made, however, "about the puff of smoke and the popping."

---

[1] Defendant states, however, that "the evidence is undisputed that Pacific's crew kept close watch on the house for at least 35 minutes before leaving."

Shortly after defendant's employees left, Mrs. Roberts saw "smoke rolling down the hill" and called the fire department. The fire equipment arrived in "about 10 minutes." Upon arrival they found a hole four or five feet in diameter burned out in the roof near the weatherhead and determined the origin of the fire to be "in the general area around the fuse box inside the trailer." The assistant fire chief testified that if he had been called at noon and had observed no fire he would have "busted the door to gain entry to check for a fire."

Mr. Lyons testified that he had had no previous trouble with the electrical wiring, but that about two years previously he had drilled a hole in the fuse box "where the fuse went into the prongs" of the "fuse holder" (apparently to repair a broken fuse holder), and "put a brass screw in there" to secure a "tight connection." He also testified that before leaving the house prior to the fire he had "shut everything off," set the thermostat of the electric furnace for 50 degrees and closed the door of the fuse box, but that there was a clothes hamper on top of the washer and drier directly under the fuse box.

According to testimony by defendant's expert witness, however, that fuse box was of an "obsolete type" and there were indications that it had "overheated for some time" and that some of the wiring had been damaged for some time. He also testified that the fire was probably caused by sparks from a short circuit of wires in the fuse box, which could have "smoldered" for some time before the fire broke out, and that the fire was caused by "defective equipment inside the house." Although he declined to say that it

was caused by the brass bolt, he did say that that was a "very poor method of repair."

There was also testimony of admissions by Mr. Lyons that he had had previous electrical problems with the circuit for the electric furnace; that he had left the door to the fuse box open; and that after the fire it appeared that "a large hole was blown in a switch box that holds fuses for the utility room of the trailer house."

*The trial court erred in striking defendant's affirmative defenses of contributory negligence and in refusing to consider such evidence.*

Defendant's amended answer alleged that plaintiff's insured was negligent "in leaving the panel door [of the fuse box] open in the presence of easily ignitable material" and that such negligence was "the proximate cause of the fire and the damage."[2] The striking of these allegations is assigned as error. Defendant would also assign as error the apparent finding by the trial court (by oral statements at the end of the trial) that "whatever negligence Mr. Lyons might have done in connection with his electrical equipment was not the cause—was not the theory of this case."[3]

---

[2] Defendant's answer also alleged that plaintiff's insured was negligent "in maintaining in their house a fuse box in a defective condition" and in "leaving the fuse box panel door open in the vicinity of easily ignitable material" and that such negligence was "the contributing cause of the fire and damage."

[3] To the same effect, the trial court made the following Finding of Fact:

"13. Evidence was admitted over objection of alleged defective fuse box in the Lyons' home; that Lyons left the fuse box door open, was away from home; that no key was available but the Court gave no consideration to this testimony as these items are not issues in the case based on the Court's ruling before trial * * *."

Plaintiff's theory of the case on this subject, as stated in respondent's brief, is that

"* * * The affirmative allegations [of defendant's answer] relate to cause of the fire starting or the insured's contributory negligence in the starting of the fire.

"No contention was made by plaintiff as to the cause of fire and no liability asserted for causing it to start.

"Plaintiff conceded Lyons would be responsible for any damages to the time the fire, in the exercise of reasonable diligence, could or should have been discovered. This might have caused a problem of apportioning damages between defendant and Lyons, but this problem was resolved by stipulation of the parties: that the damages are $14,300.00 if the court found defendant liable."

Neither party discussed either in its briefs or on oral argument in this court the possible application to the facts of this case of Oregon's new comparative negligence statute, ORS 18.470, although that statute became effective on September 9, 1971,[4] prior to this fire, which occurred on December 7, 1971.[5]

In this state of the record, in the complete absence of any discussion by either party relating to the application of ORS 18.470 to the facts of this case and

---

[4] See Oregon Laws 1971, Ch 668, and Joseph v. Lowery, 261 Or 545, 547, 495 P2d 273 (1972).

[5] In the trial court, however, defendant made the following contention:

"Although this action is governed by comparative negligence, ORS 18.470, defendant denies it was negligent in any way, and pleads plaintiff's negligence as a complete defense. However, should defendant be held negligent it is clearly proper to assert plaintiff's comparative negligence as a partial defense. ORS 16.290 (2)."

The record does not reveal plaintiff's response to that contention.

because this is one of the first cases to reach this court involving application of the substantive provisions of that statute, we decline to consider any question relating to the application of ORS 18.470 to the facts of this case.[6] Instead, we limit this decision to a discussion and disposition of the contentions raised by the parties in their briefs on this appeal.

It appears from plaintiff's theory of the case, as stated above, that it would segregate and treat separately the damages caused by the fire "to the time the fire * * * could or should have been discovered," as distinct from the damages which occurred after that "time."[7]

The parties orally stipulated that "the extent of the damages or at least the fair market value of the contents of the home was $14,300" and that "the only issue before the Court" would be "the question of liability * * *." This stipulation may resolve the problem of apportionment of the damages. It does not, however, resolve the question whether defendant was entitled to plead and offer proof that plaintiff's insured was negligent and that such negligence was the

---

[6] In Jordan v. Coos-Curry Elec. Coop., 267 Or 164, 515 P2d 913 (1973), the only question presented under ORS 18.470 was whether the question of apportionment of the damages was properly a question of fact for the jury in that case.

In Cutsforth v. Kinsua Corp., 267 Or 423, 449-50, 517 P2d 640 (1973), the application of the comparative negligence statute was discussed incidentally in the dissenting opinion, but was also not directly involved in that appeal.

[7] To that same effect, plaintiff also says in its brief that:

"The damages sought here are not those resulting from use of electrical service, nor from defects in installation, just those resulting from defendant's failure to ascertain if there was a fire, or call the fire department to make the determination, or call their supervisor and advise about what happened."

cause of the damage for which plaintiff would hold defendant responsible.

Plaintiff's theory, insofar as the negligence of its insured is concerned, would seem to rest upon either (1) the implied assumption that the negligence of plaintiff's insured had "come to rest," and was no longer "active," but had become a "condition," or (2) the implied assumption that the negligence of defendant was an intervening or superseding cause.

As to the first assumption, although under somewhat different facts, we held in *Sworden v. Gross,* 243 Or 83, 87, 409 P2d 897, 899 (1966), as follows:

> "Plaintiff claims any negligence on his part had come to rest, was no longer active, and became a condition of the street and was therefore not a cause of the second accident. If a party places his person or property in a position of danger, or establishes a state of things which is or may be dangerous to himself or others, his negligence continues so long as that source of danger remains unremedied. The jury could have found that if plaintiff were negligent under the conditions then existing he created a continuing source of potential danger to cars following him."

In that case plaintiff had failed to stop on icy pavement and had rear-ended another vehicle. Defendant had then crashed into the rear of plaintiff's vehicle. Defendant alleged that plaintiff had been contributorily negligent in causing the first collision. The trial court had stricken the allegation. This court reinstated it, asserting that the negligent conduct of the

plaintiff in causing the first collision could be found by the jury to be "a substantial factor in bringing about the injury."[9]

■ As stated by Prosser on Torts 288, § 44 (4th ed 1971), if a person sets a fire, the failure of a third person, however unreasonable, will not relieve him from liability. As also stated by Prosser, *supra,* 434, § 67, common law courts, in the absence of statute, have been unwilling to render or permit an apportionment of damages between two parties in such a case. This, of course, is the very problem sought to be solved by comparative negligence statutes, including ORS 18.470.

■ But regardless of whether the stipulation between these parties may have resolved the question of apportionment of damages and whether or not this case is to be considered as one of common law negligence or under the terms of ORS 18.470, plaintiff's initial negligence could properly be pleaded by defendant as a complete defense, particularly if, as contended by defendant in its brief, such negligence was "the actual and proximate cause of the damage."

---

[9] See also 2 Harper and James, Law of Torts 1244, § 22.12 (1956).

Plaintiff says that Sworden v. Gross, 243 Or 83, 87, 409 P2d 897, 899 (1966), is not applicable because the rule of that case would impose responsibility upon plaintiff only "so long as the danger remains unremedied," and that in this case "the source would have been remedied had the defendant's employees acted reasonably and prudently."

Assuming, however, that the trial judge could have properly reached such a conclusion, the defendant could not properly have been previously foreclosed from alleging and offering evidence in support of its contention that its employees were not negligent in believing that there was no fire at the time that they left the premises and, therefore, that there was no "danger," but that plaintiff's negligence was the sole cause of the damage.

As to the second assumption, that of intervening and superseding cause, in *Babler Bros. v. Pac. Intermountain*, 244 Or 459, 464, 415 P2d 735 (1966), we discussed a previous decision in *Oregon Mutual Ins. Co. v. Mayer*, 211 Or 556, 316 P2d 805 (1957), in which we had held that plaintiff's negligence had been superseded by defendant's negligence as a matter of law under the facts of that case.

In both *Babler* and *Oregon Mutual* the conduct of the plaintiffs alleged to have been contributorily negligent preceded the conduct of the defendants alleged to be negligent. Yet this court held in *Babler* that it is ordinarily "for the trier of fact to say whether (a) the conduct complained of was a substantial cause of the harm, and (b) whether the conduct in question was negligent," 244 Or at 464, citing *Sworden v. Gross, supra*. This case, like *Babler*, was tried to the court. And in this case, as in *Babler*, the failure of the trial court to take into account evidence of antecedent negligent conduct by plaintiff amounts to a holding that such conduct was, as a matter of law, not a legal cause of the resulting harm. 244 Or at 466.

See also Prosser, *supra*, 270-280, § 44; Restatement of Torts 2d §§ 440-449 and 465 (1965); *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 606, 469 P2d 783 (1970); and *Furrer v. Talent Irrigation District*, 258 Or 494, 511, 466 P2d 605 (1971).

■ Thus, because the question of intervening or superseding cause is ordinarily a question of fact, it follows in this case that defendant may still allege and offer proof that plaintiff's initial negligence was a contributing cause of the damage, as contended by defendant in this case.

According to plaintiff's brief, however, "the basis of defendant's liability" is the rule that "an act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligence or reckless conduct of the other or a third person," citing the dissenting opinion in *Cutsforth v. Kinzua Corp.*, 267 Or 423, 511, 517 P2d 640 (1973), in which Restatement, *supra*, § 302A is quoted to that effect.[9] According to that dissenting opinion, however, such a rule would not remove the issue of contributory negligence, even in a case arising under the comparative negligence statute (ORS 18.470).

In a supplemental brief filed by plaintiff after oral argument plaintiff makes the contention, and for the first time on this appeal, that the basis of what it claims to be defendant's duty is "[t]he trend * * * to impose a duty to rescue or to prevent further harm, even though defendant is wholly free from negligence in causing the initial injury or damage * * *."[10] Plaintiff then says that:

> "If the court agrees that there is a duty owed to plaintiff to prevent further injury to his property, then the lower court's ruling on plaintiff's motion to strike the allegations of contributory negligence was proper."

Plaintiff concedes, however, that up to the present time the cases and authorities which support such a contention have involved personal injuries, rather than property damage, as in this case, and that "this is a

---

[9] Cf. Restatement of Torts 2d § 321 (1965).

[10] Authorities cited in support of that contention include 57 Am Jur 2d, Negligence §§ 41, 42, 71, 72 and 74; 33 Annot., ALR3d 301, 303 (1970); Tubbs v. Argus, 140 Ind App 695, 225 NE2d 841 (1967); and Depue v. Flateau, 100 Minn 299, 111 NW 1 (1907).

matter of first impression in Oregon and apparently one of first impression in any state." In addition, plaintiff makes no attempt to discuss the question whether such a contention, if valid at common law, so as to impose liability despite plaintiff's original negligence, would foreclose the defendant from offering evidence of plaintiff's negligence in an action subject to the terms of comparative negligence statutes such as ORS 18.470.[11]

Defendant did not directly respond to plaintiff's Supplemental Brief, but repeats its original contention that the court erred in refusing to admit evidence of contributory negligence. In defendant's brief as appellant, however, the question whether the initial negligence of plaintiff's insured became irrelevant under the doctrine of "discovered peril" or "last clear chance" is discussed. Defendant there contends, among other things, that such a rule has no application in this case because of decisions by this court holding that defendant must have had *actual* knowledge of plaintiff's peril and that it is not sufficient that defendant should have known of plaintiff's peril, citing *Goff v. Radi, Inc.*, 251 Or 390, 391, 445 P2d 879 (1968), among other cases.

There may have been sufficient evidence in this case to make it a question of fact whether defendant's employees had actual knowledge of the "peril" to plaintiff's house, even though they did not have actual knowledge that a fire was actually burning or starting to burn in it when they left the scene.[12] We do not

---

[11] Cf. Prosser on Torts §§ 438-39 (4th ed 1971), re "last clear chance" doctrine and see note 13 below.

[12] The trial judge made the following Findings of Fact:

"8. Said smoke and noise put defendant's employees on

decide that question in this case, however, because as a matter of pleading and evidence defendant was entitled both to deny that its employees had such knowledge (in which event "last clear chance" rule would not apply) and, at the same time, to allege and offer evidence in support of its contention (which would then be valid, if proved) that prior negligence of plaintiff's insured was the cause of the damage. This is true whether the issue of contributory negligence in this case is to be considered as at common law or under ORS 18.470 (comparative negligence).[9]

■ Similarly, plaintiff's contention that defendant had a duty similar to that of a duty to rescue a person

---

notice of the probability a fire had started in the Lyons' home when said power was restored."

It is not clear, however, whether this was a finding that defendant had "actual knowledge of the peril" in the context of the rule of "last clear chance," ·as adopted by this court, because the trial court went on to make the following Conclusions of Law:

"1. There was a duty owed by defendant to plaintiff's insured to ascertain the existence of a fire or to call the local fire department or other local authorities to ascertain whether or not a fire had started. *Sullivan v. Mount. States Power Co.* 139 Or 282 at 299 Holding generally that power companies are held to the conduct of an ordinarily prudent person to take care commensurate with the dangers to be avoided. Due care consists in guarding against probabilities not possibilities.

"2. Defendant breached such duty by taking inadequate steps *to ascertain, or cause to be ascertained, whether or not a fire had started* and if so, to take precautionary steps to control it." (Emphasis added)

Moreover, in *Sullivan* defendant had actual knowledge that a fire was burning. The issue was whether defendant was responsible for the fire. There was no issue of "last clear chance" in that case because there was no claim that the fire was caused by plaintiff's negligence.

[9] In addition, there may be the further question whether the rule of "last clear chance" has any remaining vitality upon the

in peril must rest upon the assumption that defendant either knew or should have known that the plaintiff was in peril. Thus, Restatement, *supra,* § 322, states the rule as follows:

"Duty to Aid Another Harmed by Actor's Conduct
"If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm."[20]

■ Again, however, as a matter of pleading and evidence, defendant was entitled to deny that its employees either knew or had reason to know that their conduct caused plaintiff's insured to become "helpless" and, at the same time, was entitled to allege and offer evidence in support of its contention that the prior negligence of plaintiff's insured was the cause of the damage.[21]

---

adoption of Oregon's occupation negligence statute (ORS 18.470). The authorities appear to be divided on that question, which is not discussed by either party. See Prosser, *supra,* 438-39, § 67, and cases cited therein. See also Annot., 59 ALR2d 1264 (1968), and Annot., 32 ALR2d 490 (1953).

[20] Restatement of Torts 2d § 322, Comment e (1965), states that:

"The rule stated in this Section expresses a duty of affirmative action imposed upon the actor because his tortious or innocent conduct has rendered the other helpless. The rule is not an extension of the principle of 'legal cause' nor an extension of the doctrine of 'last clear chance.' "

Cf. Restatement of Torts 2d, *supra,* § 321.

[21] Again, we do not consider the findings by the trial court as determinative of the question whether defendant knew or had reason to know that plaintiff's insured was "helpless," in the context of § 322, for reasons substantially the same as those stated in note 12.

For these reasons we hold that it was error for the trial court to strike these affirmative defenses from defendant's answer and to refuse to consider evidence of plaintiff's negligence offered by defendant. The error in striking such allegations would, perhaps, have been harmless error in the event that defendant was permitted to offer all of the evidence that it would otherwise have offered under such allegations. We do not know, however, whether or not all of such evidence was offered by defendant, although it appears that at least some such evidence was offered and admitted.

In any event, the trial court erred in refusing to consider such evidence, as made clear by its express findings to that effect.[10]

In addition, of course, there is the question whether this court should adopt the rule as stated in Restatement of Torts 2d § 322 (1965), including its application to a defendant who does not know, but "has reason to know," that plaintiff is "helpless," and the extension of that rule to include property damage. Also, as with the rule of "last clear chance," there is the further question of the effect upon such a rule of the adoption of the Oregon statute on comparative negligence (ORS 18.470). See note 13.

It is also of interest that the trial judge, in comments at the conclusion of the trial, compared this case with an action for malpractice against a doctor for not setting plaintiff's leg properly and noted that in such a case the doctor could not set up as a defense that plaintiff was injured as the result of his own negligent conduct. In such a case, however, the doctor has a contractual relationship with his patient and undertakes to treat the patient in his condition at the time of such treatment.

In this case plaintiff's insured and defendant were in a contractual relationship in that defendant was a public utility and plaintiff's insured was one of its customers. No contention is made by plaintiff, however, that such a relationship is of significance in making a determination of the question whether it had a duty similar to that of a duty to rescue, so as to eliminate the question of the prior negligence of plaintiff's insured, other than plaintiff's original contention that defendant's duty is a supplier of electrical power is as stated in Sullivan v. Mount. States Power Co., 139 Or 282, 9 P2d 1038 (1932) (as discussed in note 12).

[10] See finding of fact as stated in note 3.

Defendant also assigned as error the striking of a further affirmative defense alleging that other persons in the vicinity took reasonable action to ascertain whether a fire had started, to extinguish the fire or obtain help from public authorities to do so, and remained on the premises to ascertain whether a fire had started and took precautionary steps to extinguish or control it. Defendant also assigned as error the refusal by the trial court to consider evidence of such conduct.

 We agree that such facts, if proved, would not provide a defense because of the rule that if one's negligent conduct operates as a substantial fact in bringing about harm to another, one is not protected from liability because of the failure of a third person to prevent the harm. See Restatement of Torts 2d §§ 439, 452 (1965). Accordingly, the trial court did not err in striking that defense.

Evidence of such conduct by other persons would, however, be relevant upon the issue whether defendant's employees were negligent in leaving the premises, as charged by plaintiff, as well as upon the issue of causation, and would therefore be admissible under a general denial, although such evidence would not be controlling on either issue.

For these reasons this case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DENECKE, J., specially concurring.

I concur in the result reached by the majority; however, not for all the reasons stated by the majority.

The defendant assumed it had a duty to take precautions to determine if a fire had been started in the trailer and, if so, to attempt to suppress the fire. I think this assumption is correct.

Plaintiff charges defendant with negligence in failing to determine if a fire had been started and in failing to suppress the fire. Plaintiff did not charge that the defendant negligently started the fire.

Defendant alleges in its answer that the plaintiff's insured (Lyons) caused the start of the fire by negligently repairing and maintaining the electrical installations in the trailer. On plaintiff's motion the trial court struck this defense of contributory negligence upon the ground that it was irrelevant.

Plaintiff's position is that it charged defendant with negligence in failing to discover and suppress the fire; that any possible negligence on Lyons' part in starting the fire is irrelevant to defendant's liability. I disagree with plaintiff's contention. If defendant can prove Lyons' negligence started the fire, I am of the opinion that plaintiff is barred from recovery.

Prosser states:

"* * * If he sets a fire, the failure of a third person to extinguish it, however unreasonable, will not relieve him from liability. * * *" Prosser, Law of Torts 288, § 44 (4th ed 1971).

It seems to me the same result should follow if the plaintiff's negligence was a cause of the fire. The issue is one of foreseeability, and it should at least be a question of fact whether one who negligently causes a fire to start in his dwelling should foresee that a third person (the defendant in this case) may act negligently in failing to discover the fire or in attempting to suppress the fire.

The trial court struck defendant's fourth affirmative defense which alleged other persons "took reasonable action to ascertain whether a fire had started" and went on to allege that other persons did what plaintiff charged defendant failed to do. This was an attempt by defendant to allege that any negligence on its part was not a cause of the damage as other persons did whatever plaintiff contends defendant was supposed to do and the damage, nevertheless, ensued. This contention can be made under a general denial; therefore, the order striking was not in error.

The last assignment of error is on the same general subject. Defendant contends the trial court refused to consider evidence that third persons properly performed duties which plaintiff claims were negligently performed by defendant. For this reason, defendant contends, any negligence on its part could not be a cause of the damage.

I cannot determine whether the trial court failed to consider this evidence. On a new trial the trial court should consider such evidence, if it is introduced, to decide whether the defendant's failure to discover and suppress the fire was a cause of the damage.

O'CONNELL, C. J., joins in this specially concurring opinion.